CARRIE S. HORANDT, EXECUTRIX, &c., v. CENTRAL RAIL-
ROAD COMPANY OF NEW JERSEY.

CARRIE S. HORANDT v. CENTRAL RAILROAD COMPANY OF
NEW JERSEY.

RUTH HORANDT, BY NEXT FRIEND, &c., v. CENTRAL RAIL-
ROAD COMPANY OF NEW JERSEY.

REINHARDT BENDER, BY NEXT FRIEND, &c., v. CENTRAL
RAILROAD COMPANY OF NEW JERSEY.

Argued February 17, 1909—Decided June 7, 1909.

1. Evidence of witnesses whose attention was not specially called to
the matter that they did not hear a whistle or bell rung by a
train approaching a highway grade crossing is of slight value in
comparison with the positive affirmative evidence of other wit-
nesses that they did hear the bell or whistle, especially when such
latter witnesses testify to some action on their part as a result
of so hearing.
2. The failure of a railroad company to ring a crossing bell as a
signal of the approach of a train cannot be regarded as negli-
gence causing an accident to travelers on the highway who were
unaware of the existence of the crossing or the bell, and therefore
did not rely on the latter as a warning.
3. A railroad is not bound to use extra precautions because of
special elements of danger at one of its crossings unless it is
responsible for the existence of those dangers.
4. A traveler on a highway approaching a railroad crossing is
not relieved from the responsibility of looking and listening for
trains by reason of his ignorance of the existence of such cross-
ing, if the presence of the railroad is obvious to anyone reasonably
using his ordinary powers of observation.
5. The rule laid down in *Pennsylvania Railroad Co. v. Goodenough*,
26 *Vroom* 577, does not apply to cases in which by reason of the
death of the husband he cannot be joined as plaintiff.

On rule to show cause.

The four above-entitled suits grow out of a collision be-
tween an automobile owned and driven by deceased, Christo-

pher Horandt, and a railroad train of the defendant company at Keyport, Monmouth county, on Sunday, July 7th, 1907. Christopher Horandt was killed and the automobile demolished; his wife, Carrie S. Horandt, his daughter Ruth and nephew Reinhardt Bender, who were riding in the automobile, were all injured. The four suits were tried together at the Passaic Circuit, a verdict for plaintiff found in each case, and rules to show cause granted why the verdicts should not be set aside and new trials had. No exceptions were reserved and questions of both law and fact were argued on the return of the rules.

The members of the party were on their way from Asbury Park to Paterson and were passing northwardly through Keyport about four P. M. of July 7th, on a main thoroughfare called Broad street, which is crossed by a single-track railroad operated by the defendant at an angle on the left or west of Broad street of sixty-six degrees twenty-nine minutes, and on the right of one hundred and thirteen degrees thirty-one minutes. On the northerly side of the railroad, and less than two hundred feet west of the centre of Broad street, was the Keyport railroad station with its semaphore signal. On each side of the railroad ran a line of telegraph poles and their wires. The track and its rails and ties show plainly on both sides of Broad street in the photographs submitted in evidence. There was a standard warning sign reading, "Look out for the Locomotive," on the west curb of Broad street some twenty-three feet south of the track, and on the other side of Broad street a post with an alarm bell, which bell was not ringing, however, and a sign which was undecipherable because of old and new lettering having run together, except the word "Danger," which clearly appeared in large letters in the centre. Broad street is perfectly straight and almost level for a long distance south of the railroad, from which direction the automobile approached. Looking toward the right, the view of the railroad was unobstructed after approaching within ninety-six feet of the track; on the left, until within seventy-five feet of the track, a clear view of the railroad and of the station is shut off by buildings, the last

of which is a small one-story garage, the nearest point of which is sixty-two feet from the south rail of the track, measured along the west side of Broad street, and if projected at right angles to the centre line of Broad street would be seventy-five feet from the centre of the track, but from this point onward the station and the track for a long distance are in full sight. There were no safety gates or flagman. The day was clear; it was a quiet Sunday afternoon; there was no other traffic of consequence going on in Broad street, and the wind was blowing from the direction of the train. The automobile was moving northward at about twelve miles an hour, and collided with the locomotive of a special train which was traveling northeastwardly or toward the right at a rate of about twenty-five miles an hour. On the part of the plaintiff it was claimed that the statutory signals by ringing bell or blowing whistle were omitted; that neither signal was given, and that neither Mr. Horandt nor anyone in his party was aware of the existence of a railroad at that place, or saw or heard the train until the moment of collision or too late to avoid it. Motions to nonsuit and to direct a verdict for defendant were denied, and the case submitted to the jury on the theory (*a*) of negligence in failing to give the statutory signals; (*b*) that the jury were entitled to find the crossing a peculiarly dangerous one by reason of the angle of the tracks, obstructions to view, &c., and, in the language of the trial judge, to exact of the railroad company the duty of giving some visible notice of the approach of trains; (*c*) that negligence might be inferred from the placing of a crossing bell at the crossing and the failure to sound it as a signal of the approach of the train in question.

Before GUMMERE, CHIEF JUSTICE, and Justices SWAYZE and PARKER.

For the plaintiffs, *Wayne Dumont* and *Clifford L. Newman.*

For the defendants, *William A. Barkalow* and *Frederick J. Faulks.*

The opinion of the court was delivered by

PARKER, J.   Our examination of the evidence and proceedings in this case satisfies us that the verdict should be set aside and a new trial granted, and this on several grounds.

*First.* We are of opinion that the verdict, so far as predicated on the alleged failure of the defendant to give the statutory crossing signals by bell or whistle, was clearly against the weight of evidence.   The three survivors of the accident testified they were looking straight ahead, saw no sign of a railroad and heard no bell or whistle.   Six other witnesses, at varying distances from the track, testified for the plaintiff that they heard neither bell nor whistle.   One was positive that the whistle did not blow, but was not sure about the bell, and said it might have rung but he did not hear it.   On the other hand, one witness, who was at the automobile garage which hid his view of the train, was apprised of its approach by hearing the bell ring; another who was driving on Main street, which is the next street west of Broad street, stopped his horse on account of hearing the bell, so as to let the train go by, and says that the bell continued to ring as the train crossed Main street.   He also testified to continuous blowing of the whistle, but probably confused this with the blowing off of steam as testified to by another witness. His wife, who was with him in the carriage, gave similar testimony.   Three other disinterested witnesses, Mr. Kellogg, Miss Kruser and Mrs. Flynn, testified positively to the ringing of the bell for a considerable distance before the train reached the crossing.   Mrs. Flynn said she was engaged in conversation at the time and had to stop on account of the noise of the bell and of escaping steam from the locomotive. In addition, the engineer, fireman and baggageman of the train all swore definitely and positively to the ringing of the bell all the way from Matawan yard, a distance of over a mile. The case for the defendant is not as strong as in *Eissing* v. *Erie Railroad Co.*, 44 *Vroom* 343, but the evidence seems nearly, if not quite, as cogent as in *Holmes* v. *Pennsylvania Railroad Co.*, 45 *Id.* 469, in which the Court of Errors and Appeals sustained a direction of verdict for the defendant on

the ground that the positive evidence of the statutory signals entirely destroyed the probative force of negative evidence for the plaintiff, from which, if uncontradicted, the absence of such signals might have been inferred. Without going so far as to say that this phase of the case should have been removed from the consideration of the jury, it is obvious that a finding, on this evidence, of absence of signal by bell or whistle, cannot be fairly supported.

*Second.* There was another theory on which the court instructed the jury, erroneously, as we think, that they might find the defendant guilty of negligence causing the accident. The court charged that as the evidence showed that the crossing bell was not sounded as the train approached, the jury might consider that fact as bearing not only upon the question of defendant's negligence, but also upon the question of notice to the plaintiff driving the automobile, as he approached the crossing. The case for the plaintiffs rested on the theory that they were unaware of the crossing and that no adequate notice of it was given. Hence it is evident that they placed no reliance on the bell to warn them of the approach of the train, in which case only could the failure to ring it be regarded as negligence directly tending to cause the accident. There was error, therefore, in charging the jury that failure to ring the crossing bell to signal the approach of the train might be regarded as such negligence.

*Third.* The court also erred in charging the jury that by reason of the physical conditions existing they might regard the crossing as a place of extra danger and hold the company to a duty of extra precautions, and especially of giving visible notice of the approach of the train. The charge on this point was as follows:

"It appears that the company has located its tracks through or alongside of some buildings, and slightly depressed those tracks as they cross Broad street, at an acute angle of sixty-six degrees and twenty-nine minutes, and that bushes and other obstructions obscured the train from the vision to some extent of one approaching the crossing on Broad street. If you think that the existence of the buildings and the course

of the acute angle in the case rendered the use of this railroad crossing dangerous, so that, in its ordinary use of the street called Broad street, this statutory signal would not give reasonable warning of the approach of trains, then it is for you to say whether the railroad company should not have provided some other notice of the approach of a train, such as the construction of a gate, the presence of a flagman, or a crossing bell. But, you can only say that such a duty on the part of the railroad company existed provided you come to the conclusion that because of the existence of the houses, buildings and the angle at which the railroad crosses the street, or other obstructions, the use of the railroad crossing was extra-hazardous to the people using Broad street to such an extent that the ordinary statutory signals would not give fair warning of the approach of trains.

"Should you come to that conclusion, you would have a right to exact of the railroad company the duty of giving some visible notice that the train was approaching, and a failure to do what you think ought to have been done would, under those circumstances, be negligence chargeable to the company."

The rule is well settled that when a railroad company has created at a crossing a place of extra danger, it is bound to use extra precautions (*Pennsylvania Railroad Co.* v. *Matthews,* 7 *Vroom* 531, 535) ; but only when the situation has been created by some act of the company. *New York, Lake Erie and Western Railroad Co.* v. *Leaman,* 25 *Id.* 202 ; *Philadelphia and Reading Railroad Co.* v. *Slate,* 32 *Id.* 71 ; *Siracusa* v. *Atlantic City Railroad Co.,* 39 *Id.* 446. As will appear later, we do not think that the evidence showed the place to be one of extra danger, but conceding this for the present, there was nothing in the case to show that any alleged dangerous feature of the crossing was occasioned by the act of the company. The charge in this respect therefore was erroneous.

*Fourth.* We turn now to a point which relates solely to the right of recovery by the executrix of Christopher Horandt, deceased, viz., the contributory negligence of said deceased.

He was driving the automobile; the other plaintiffs, including his wife, were mere passengers, exercising no control over his actions, and, as the trial judge correctly charged, unless there was something that they individually should have done in the exercise of due care to avoid injury (and of this there is no claim), they are not chargeable with contributory negligence, as negligence of the deceased cannot be imputed to them. *New York, &c., Railroad Co.* v. *Steinbrenner,* 18 *Vroom* 161; *Consolidated Traction Co.* v. *Hoimark,* 31 *Id.* 456; *Noonan* v. *Consolidated Traction Co.,* 35 *Id.* 579. With regard particularly to Mrs. Horandt, it may be remarked that her case is not controlled by the decision in *Pennsylvania Railroad Co.* v. *Goodenough,* 26 *Id.* 577, in which it was held that in actions by husband and wife for a tort to the wife, his contributory negligence would defeat the suit because of his common law interest in and control of the recovery. The present case differs in that there is no husband to exercise any such control, he having perished in the accident, and as a result the right of action enures to the wife alone. This makes it unnecessary to consider the effect of the statute of 1906 (*Pamph. L., p.* 525) giving to married women the right of suing without joinder of the husband for all torts to person or property, and which was considered by Judge Lanning to divest the husband of all interest in the suit. *Long* v. *Pennsylvania Railroad Co.,* 30 *N. J. L. J.* 56.

Coming now to the question whether deceased was himself guilty of contributory negligence, we think that anyone approaching this railroad crossing via Broad street from the south, and having knowledge or notice of its existence, could not fail to see an approaching train if he exercised due care. A reference to the statement of facts at the head of this opinion will exhibit the correctness of this view. To the right for a distance of nearly one hundred feet from the track the view of a train was over an open field and unobstructed by anything but the line of telegraph poles, which was negligible as a factor. To the left, from which direction the train approached, the view was equally clear for an indefinite distance down the track, on passing the small garage, over

sixty feet from the nearest rail. The photographs submitted on this phase of the case are convincing, and that the driver of an automobile approaching under these circumstances could and should see a train in ample time to avoid collision by stopping is a proposition that needs but to be stated. In this aspect of the case it may be remarked that the question whether the crossing was a place of extra danger was not a jury question and should have been decided by the court in the negative. Going one step farther, we resort to the general rule that if the circumstances are such that a party in the exercise of ordinary care would of necessity become aware of an existing situation, he is charged with knowledge of that situation and cannot escape responsibility by pleading actual ignorance of it. This rule is applicable in the present case. The physical situation pointed unmistakably to the presence of a railroad at that place. True, there were no gates, but there was a railroad crossing sign of full size, plainly visible except as to the small section covered by a telegraph pole; the bell signal post and sign, though the latter was partly illegible, were fully as large as the crossing sign and conspicuous enough and the word "danger" plain enough to attract attention and provoke inquiry; as the auto car approached, the track itself came into view on both the right and left, bordered with two lines of telegraph poles; the ties were visible, not obscured by the weeds and grass to any extent; within sixty feet of the railroad the view to both right and left was over an open lot, with the railroad stretching out on both sides and the station and its semaphore in full view. By that time, at the speed of the automobile and train, as testified to, the train itself was within plain sight and doubtless passing the station. It is inconceivable that anyone having his faculties and using them in the most casual way could fail to become aware not only of the crossing but of the train itself. Only one explanation seems open, and that is that the driver of this automobile, not expecting a railroad at that place, gave no attention to his surroundings and pursued his way with eyes fixed on the roadway just ahead of him until too late to stop. Due care in driving an automobile or any other vehicle de-

mands at least some attention to the surroundings, and railroads are so plentiful in this state that the presence of a railroad track in a town or village is naturally to be expected. The railroad was lawfully there; it had complied with the statute, by erecting the crossing sign. It might be too much to say that travelers were thereby charged with notice of the presence of a railroad track, but we need not go so far as this. Our view is that, taking this and the other indications together, the presence of that track was perfectly obvious; that any traveler using ordinary care for his safety would necessarily see the indications of the railroad and would be therefore charged with notice of it, and having that notice, could not get into collision with a train at that point unless through his own negligence or some inevitable accident. In this view of the case of Carrie S. Horandt as executrix of her deceased husband, the court should have directed a verdict for the defendant.

The rules to show cause will be made absolute.