# Bates *v.* Louisville & Nashville R. R. Co.

## *Crossing Accident.*

(Decided January 22, 1914. 64 South. 298.)

1. *Railroads; Crossing Accident; Contributory Negligence.*—Where plaintiff was familiar with the railroad crossing and negligently drove thereon at night, knowing that a train was liable to pass at any moment, but stopped once and looked and listened when about seventy-two feet from the crossing, and then drove on, and was struck and injured before his wagon passed over the track, he was guilty of negligence as a matter of law.

2. *Same; Subsequent Negligence.*—Where the engineer discovered plaintiff on the track at a crossing when the engine was about 100 feet away, and the train was moving at the rate of 17 feet per second, and the engineer at once cut off the steam, applied the air brakes and reversed his engine, he was not guilty of subsequent negligence in failing to sand the rails, it not appearing that the rails were wet or that the wheels were slipping, and it also appearing that if applied the sand would have done no good.

3. *Same; Duty to Stop; Jury Question.*—Where there was no testimony that the train could or should have been stopped within 200 feet, or within any definite distance, and the only expert evidence offered was that it was stopped and slowed as quickly as possible under the circumstances, the court was not required to submit that

question to the jury because one of plaintiff's witnesses testified that the rear of the coach had passed the crossing about 100 feet before the train was stopped, while a number of witnesses testified that it stopped on the crossing.

APPEAL from Shelby County Court.

Heard before Hon. E. S. LYMAN.

Action by C. L. Bates against the Louisville & Nashville Railroad Company for damages for injury to person and property received while crossing track. Judgment for defendant, and plaintiff appeals. Affirmed.

While crossing defendant's track at public road crossing in a four-mule wagon which he was driving, plaintiff was injured by collision with defendant's passenger train, which struck the hind wheels of the wagon, and threw him to the ground.

Plaintiff's account of the transaction is as follows: "In going from Shelby to my home, I crossed the railroad where I was injured, and I am familiar with this crossing. I was familiar with the schedule of the train at Shelby, and knew that the train for Columbiana on the branch line from Shelby by which I was injured left Shelby, according to schedule, as soon as the train from Calera to Anniston on the main line came in, and the transfers were made. I have lived near Shelby off and on about 20 years, and have lived about a mile and a half west of Shelby for the past 5 years. I had seen the train come in from Calera the night I was injured, and knew when I was approaching the crossing where I was injured that the Columbiana train had not passed, and that it was about time for it to pass this crossing, and I was watching for it. It was dark, and drizzling rain. There was nothing to prevent me hearing the noise of an approaching train except the noise of the furnace and the noise of the wagon. I stopped the team when I was about 72 feet from the crossing. I could and did see the crossing ahead of me. The track curved from

the crossing back to the station to my left. There was an elevation or ridge on my left between me and the track, which sloped gradually to the right of way, ending at the level ground about 30 to 50 feet from the nearest rail. This ridge and some out-houses cut off the view of some of the track and of the station from where I stopped. I stopped just a short time, and listened and looked, and did not see or hear the train. I then drove my mules on in a walk, and first saw the train coming as my lead mules were on the track. I cannot say positively whether the mules were on the track, or just going on, or had just passed over; but my best recollection is that they were just going on it. I was sitting in the wagon about 25 feet from the nearest rail when my attention was first called to the train by the light of the engine. I cannot say whether it was the light from the exhaust or the headlight. The engine was the first thing I saw, and it was 50 or 60 feet, or maybe 30 or 40 yards, from the crossing when I first saw it. From the front wheel of the wagon to the head of the lead mules was about 25 feet, and I sat about 3 or 4 feet from the front end of the wagon bed. From the point where I stopped, looked, and listened, I could have seen an approaching train 85 yards from the crossing towards the station; at a point 30 or 35 feet from the crossing, it could have been seen some further, but not much different, as the outhouses would have obstructed the view some. I do not know how far an approaching train might have been seen from a point 10 feet east of the crossing; but immediately at the crosisng one could see a train all the way to the station, between 200 and 300 yards. I don't remember that I looked for the train any more after stopping at the point first mentioned until my lead mules were on the track, or climbing upon it when I looked up and saw it coming 30 or 40 yards

away, and whipped up my mules, trying to get over. I did not stop and look any more after the first time."

The engineer in charge of the train testified as follows: "As we approached the crossing, I was seated in my proper place on the right-hand side of the engine, looking to the front; but, it being dark, my vision could not follow the track exactly because of the curve to the right on the track. The shaft of light from the headlight was mostly to the left of the track, gradually swinging to the right as the engine followed the curve to the right in the track. The cone of light was projected in a straight line with the boiler of the engine, and as we approached the crossing was thrown on the road west of the crossing, gradually swinging until it enveloped the crossing. It was a standard headlight, and in good condition, and burning as usual, though, on account of the mist, did not shine as well as in fair weather. I did not see Mr. Bates or his team until within about 100 feet of the crossing, at which time the light was on the crossing, and I discovered the bulk of the wagon on the crossing, and the mules already across, and, as soon as I discovered them, I cut off steam, put on air, and reversed the engine, cutting off all steam. I did this as rapidly as possible, and had just completed it when the engine struck the wagon. This was all that I could do to stop my train, and it was done as fast as I could reach for the air, reverse lever, and throttle, which took practically no time. The train slowed down rapidly. The engine stopped about 100 feet beyond the crossing, with the rear of the passenger coach on the crossing, and in my judgment this was as quick a stop as could have been made under the circumstances. I did not blow the whistle after discovering Mr. Bates, as I had no time to do so after applying the means to stop the train. There was a box of sand on the engine full of sand; but it

would have done no good on that occasion to apply the same. Sand is used to put on wet track, for the purpose of making the rails hold the wheels, and give the wheels a better grip on the rails. In my judgment the application of sand would have done no good in this case. I had partly cut off steam just after leaving the crossover switch, and was rolling downgrade towards the road crossing, with but little steam on. I could not have reversed the engine with the steam pressure on. It would have been necessary to cut off the steam before reversing the engine. In my judgment my train was traveling 10 or 12 miles an hour when I saw Mr. Bates, and it would have been impossible to have stopped the train in time to prevent the accident."

The master mechanic of defendant and the conductor of the train testified that the proper method of stopping the train quickly is to cut off steam, and apply air, and that a stop in 200 feet was a good stop under the circumstances here shown. One of plaintiff's witnesses testified that the rear end of the train—the train consisting of engine, tender, and one passenger coach— stopped after plaintiff was struck about 100 feet beyond the crossing, and another that it had passed the crossing. The defendant's witnesses all testified that the end of the train was on or had barely gotten over the crossing. At the conclusion of the testimony the court gave the general charge for defendant.

VASSAR L. ALLEN, and W. W. WALLACE, for appellant. The court was in error in giving the general affirmative charge at the instance of appellee.—Sec. 5473, Code 1907; *A. G. S. R. R. Co. v. McWhorter*, 156 Ala. 269; *L. & N. v. Young*, 153 Ala. 232; *Same v. Lowe*, 158 Ala. 391; *Duncan v. St. L. & S. F.*, 152 Ala. 118; *Huggins v. South. Ry.*, 159 Ala. 189; *Randall v. B. R. L. & P. Co.*, 158 Ala. 532.

BROWN, LEEPER & KOENIG, for appellee. Granting for the sake of argument that the evidence tended to show initial or antecedent negligence in approaching the crossing at a great rate of speed, or in failing to blow the whistle or ring the bell, this was but simple negligence, and does not render the railroad liable for plaintiff's contributory negligence, proximately contributing to the injury.—*Bryant v. South. Ry.*, 137 Ala. 488; *L. & N. v. Hairston*, 97 Ala. 351; *C. of Ga. v. Foshee*, 125 Ala. 212; *Same v. Barnett*, 151 Ala. 410.

SOMERVILLE, J.—Conceding that the testimony offered by plaintiff was sufficient to indicate simple negligence on the part of the trainmen in approaching the crossing, it is certain that on the undisputed evidence plaintiff was himself guilty of contributory negligence, as matter of law, which proximately produced the collision.

The law applicable to the circumstances of this case, as detailed by plaintiff himself, has been repeatedly stated by this court, and we need only to refer to the cases. *C. of Ga. Ry. Co. v. Foshee*, 125 Ala. 199, 212, 27 South. 1006; *Same v. Barnett*, 151 Ala. Ala. 407, 44 South. 392; *L. & N. R. R. Co. v. Calvert*, 172 Ala. 597, 55 South. 812.

It is urged, however, that there was evidence from which the jury might reasonably have found the engineer guilty of subsequent negligence, in that he failed to resort to the device of sanding the track in addition to the other means used for stopping the train.

The evidence shows that sand is dropped upon wet rails under a moving train to prevent the wheels from slipping on the rails. It does not appear that the wheels were slipping or likely to slip in this instance, and the only expert evidence offered on the subject was to the

effect that it would have done no good, and that it was impossible to avoid the collision. This seems to be borne out by the other facts. The wagon was discovered at a distance of about 100 feet, and the train, moving at about 17 feet per second, reached the crossing in less than 6 seconds. It must have required at least 3 seconds for the engineer to cut off steam, apply the air brakes, and reverse the engine. To have then begun sanding the rails, 2 or 3 seconds before the collision, could not in any view of the case have availed anything. Indeed, it appears that the engineer was engaged in the preventive actions actually adopted up to the time of the collision.

It is further suggested by appellant that an issue of disputed fact grows out of that phase of the evidence relating to the distance within which the train was stopped after the discovery of the wagon at the crossing; one of plaintiff's witnesses testifying that the rear of the coach had passed about 100 feet beyond the crossing, while a number of defendant's witnesses testified that it stopped at the crossing.

There is, however, no testimony in the record to the effect that this train should or could have been stopped within 200 feet, or within any definite distance, and the only expert testimony offered shows that it was slowed and stopped as quickly as possible under the circumstances. This evidence was conclusive upon the court on this issue, and required the affirmative charge in favor of the defendant as requested and given.—*Harris v. N. C., etc., R. R. Co.,* 153 Ala. 139, 44 South. 962, 14 L. R. A. (N. S.) 261.

The judgment will be affirmed.

Affirmed.

ANDERSON, C. J., and MCCLELLAN and DE GRAFFENRIED, JJ., concur.