199 So. 28

## SLOSS–SHEFFIELD STEEL & IRON CO.
## v. WILLINGHAM.

### 6 Div. 712.

Supreme Court of Alabama.

Oct. 10, 1940.

Rehearing Denied Dec. 12, 1940.

Kingman C. Shelburne and Bradley, Baldwin, All & White, all of Birmingham, for petitioner.

Clifford Emond, of Birmingham, for respondent.

THOMAS, Justice.

This is a petition for certiorari to review the action of the Court of Appeals.

The respective briefs of counsel on both appeals (this one and that in Sloss-Sheffield Steel & Iron Co. v. Peinhardt, ante, p. 207, 199 So. 33, show that same pleading, in legal effect, and facts in evidence.

In Sloss-Sheffield Steel & Iron Co. v. Peinhardt, supra, it was held that "there was error in declining to give the general affirmative charge requested in writing by defendant." It was held that the evidence showed no negligent operation by defendant of its train with which the plaintiff collided; and on rehearing it was held that no subsequent negligence was shown. The Court of Appeals failed to follow this decision. Hence the present review by certiorari.

. The rule as to the giving or refusing of the affirmative charge need not be repeated. McMillan v. Aiken, 205 Ala. 35, 88 So. 135; Louis Pizitz Dry Goods Co. v. Waldrop, 237 Ala. 208, 186 So. 151; Sloss-Sheffield Steel & Iron Co. v. Peinhardt, supra.

The power and duty of this court to review such action on the part of the Court of Appeals is of organic (Constitution, § 140) and statutory law. Code, §§ 7318, 10276; 14 Amer.Juris. p. 461.

In Ex parte Louisville & Nashville R. R. Co., 176 Ala. 631, 636, 637, 58 So. 315, 317, this court declared:

"It is sufficient to say that this court will exercise its powers cautiously and sparingly and only in extreme cases, not necessary to enumerate, and when not covered by the following instances. We will, however, invariably and unhesitatingly, by certiorari or other writs, superintend and control the Court of Appeals. so as to compel action within its jurisdiction and prevent action beyond its jurisdiction, as well as to the extent of preserving uniformity and harmony between its decisions and those previously laid down by this court. * * *

" 'Without attempting to specify the reasons that may be sufficient to justify us in exercising the power in other cases, we are of the opinion that it may be resorted to in the following instances: First, when the Court of Appeals is without jurisdiction to review the judgment in question; second, when in a clear case it refuses to be guided or controlled by the law as laid down in the prior decisions of this court. In this event, it would become our imperative duty to resort to it, in order to enforce uniformity of decision in the appellate courts of the state.' "

And of the situation presented, counsel for petitioner aptly observes, that where two cases are consolidated for the purpose of trial and are tried together and on appeal of each of said causes, the Supreme Court holds that in one of the cases the general affirmative charge should have been given for the defendant, the Court of Appeals, to which the other case is taken, where the evidence is identical and the issues the same in legal effect, has no alternative except to follow the decision of the Supreme Court. Such is the rule of the well-understood decisions of the Supreme Court and of the Court of Appeals.

Rogers v. State, 239 Ala. 1, 193 So. 872; Code, §§ 7318 and 10276; Great A. & P. Tea Co. v. Crabtree, 27 Ala.App. 457, 173 So. 894; Fidelity & Casualty Co. of New York v. Raborn, 27 Ala.App. 458, 173 So. 895; Thornhill v. State, 28 Ala.App. 527, 189 So. 913; American Equitable Assurance Co. of New York v. Bailey, 25 Ala. App. 303, 147 So. 446.

It may be said here that the Court of Appeals believed from its record and the established rule that obtains that error had intervened in the Supreme Court as declared in the companion case of Sloss-Sheffield Steel & Iron Co. v. Peinhardt, supra. However this may have been, it was the duty of the Court of Appeals to follow the announcement of this court. It may be observed that this court is now examining the facts of the two cases before all the justices to a correct application of the rules that govern in this appellate jurisdiction.

In the former opinion it was indicated that where the facts bearing on the issues in dispute and the evidence touching the same present a reasonable difference of opinion, it is a question for the jury to decide. Louis Pizitz Dry Goods Co. v. Waldrop, supra; McMillan v. Aiken, supra. But where the evidence permits of but one reasonable conclusion "to be drawn by reasonable men," the question of "proximate cause" is to be determined by the court as one of law. The Supreme Court followed the latter rule in the Peinhardt case, supra.

The question here is whether or not the general affirmative charge should have been given in the Willingham case, which was a question of law as presented by both appeals on like pleading and evidence.

Therefore, in considering the Willingham case, the Court of Appeals had no alternative but to follow the holding of the Supreme Court of Alabama in the Peinhardt case, supra.

The fact that the Supreme Court of Alabama held that the defendant was entitled to the general affirmative charge in the Peinhardt case means that the testimony in the record of said case was not susceptible of other interpretation by reasonable men.

It should be remembered that the Peinhardt case and the Willingham case are not cases involving a driver and a passenger. The cases involve rights of recovery of the driver and of the owner of the truck, who was the employer of the driver,—the driver acting within the line and scope of his employment at the time of the collision.

In City of Birmingham v. Latham, 230 Ala. 601, 606, 162 So. 675, 678, Mr. Justice Gardner (now the Chief Justice) observed of the definitions of results of reasonable sequence, according to the ordinary course of events, that "These definitions are based upon the theory that while a person is expected to anticipate and guard against all reasonable consequences, yet he is not expected to anticipate and guard against that which no reasonable man would expect to occur." Western Ry. Co. v. Mutch, 97 Ala. 194, 11 So. 894, 21 L.R.A. 316, 38 Am.St.Rep. 179; Holt v. Fountain, 218 Ala. 661, 120 So. 149; Louisville & N. R. Co. v. Quick, 125 Ala. 553, 28 So. 14; Ruffin Coal & Transfer Co. v. Rich, 214 Ala. 633, 108 So. 596; Armstrong v. Street Ry. Co., 123 Ala. 233, 26 So. 349; Morgan Hill Paving Co. v. Fonville, 218 Ala. 566, 119 So. 610; Vaughn v. Dwight Mfg. Co., 206 Ala. 552, 91 So. 77 * * *.

"When the facts are such that reasonable men must draw the same conclusion, the question of proximate cause is one of law for the courts. The above-noted authorities suffice as illustrative of this rule. Generally, the question is one for the jury. Morgan Hill Paving Co. v. Fonville, supra."

The plaintiff introduced in evidence interrogatories and answers propounded to defendant and thereby vouched for the correctness of such evidence. Equitable Life Assurance Society v. Welch, Adm'r, 239 Ala. 453, 195 So. 554; Louisville & Nashville R. Co. v. Scott, 232 Ala. 284, 167 So. 572; Peterson v. State, 227 Ala. 361, 150 So. 156. The evidence was to the effect that the truck collided with or "ran against the side of the last car of the train * * * composed of locomotive and two cars"; that the point of contact was "with the last car on the right hand side"; that there was no notice or warning to the engineer "that plaintiff was going to crash, or might likely crash into the side of the train"; that the "vehicle in which plaintiff was riding from the crossing where the accident occurred, when your engineer and/or fireman first saw the vehicle approaching the point of such collision" was something like "a block away"; that no signals "were given in anticipation of any possibility of a collision, or the crashing of plaintiff's truck into the side of the rear car of the train, as the crew had no notice that he

might likely crash into the train and did not anticipate any such act. Regular crossing signal was given, with bell and whistle just before locomotive stated (started) over the crossing, and at that time the way was clear for the train to cross and plaintiff and his truck were coming North, and after the train got partly across with last car still on crossing, plaintiff crashed into last car. * * *" Defendant further answered as follows: "No whistle was blown in anticipation of the crash or immediately before the crash, but the regular crossing signal was blown shortly before the engine entered the crossing."

In answer to the question, "Were there any box cars, freight cars, passenger coaches or other sort of cars standing on any of the tracks at or near the point where said collision occurred at said time, and if so, give the location of each of such cars with reference to the said public road where said collision took place and with reference to the passenger and/or freight depot of the defendant nearest to the point of such collision, or the next regular stopping place where defendant was to stop said train," the defendant said "No."

And further the question "If you state that you did not have a watchman at said crossing, then state whether or not you had a bell or light to give any signal or warning to the driver of the motor truck in which plaintiff was riding, of the approach of said train. If so, state (a) which and whether it was in order or in working condition," was asked to which the following answer was made—"Yes, had a bell and two head lights on the engine, and other lights on the train. (a) They were all in good condition illuminating properly."

The other evidence supported the above-quoted statements.

The evidence taken with the photographs exhibited, the other undisputed evidence that at the public crossing where the collision occurred, the truck struck the train beyond the engine at or near one of the hot-pot couplings; that there was undisputed evidence that twenty-eight feet of skid marks of the truck were shown in its approach to the crossing which were made in attempting to stop the truck; the fact that the point of release of the brakes was indicated (by the location of the truck which was ten or twelve feet from the crossing); that no agent of defendant saw plaintiff and the truck on the public street proceeding at the rate of about thirty miles

an hour nearer than one-half of the distance of a city block (when the signal for the crossing was given), the train being about twenty feet from the crossing; that no unusual conduct of the driver indicated to the defendant's agents that the rule of "stop, look and listen" would not be observed; that the train was moving from 8 to 10 miles per hour; that the truck approached the point of contact at the rate of 15 to 20 miles per hour; left no doubt that a reasonable man would be warranted in the assumption that the truck would stop and not collide with the train.

The foregoing facts with the observations contained in the Peinhardt case indicate a state of undisputed proof that the facts are such that reasonable men must draw the same conclusion as to the proximate cause of the collision, and as held in the Peinhardt case, supra.

The plaintiff admitted that he had frequently approached by that way and failed to show that there was anything to obscure the view of the train with the illumination of its headlight and the signal of the man on the running board of the tender. The rule is that one is to anticipate and guard against all reasonable consequences and not against that which no reasonable man may expect to occur. Such is the case presented in both appeals.

The negative evidence of not hearing signals or seeing lights by the witnesses Tolliver, Hall and Watts is explained by their point of observation, or lack of attention as to this and the facts shown by the plaintiff's own evidence contained in interrogatories and answers propounded to defendant under the statute and introduced in evidence by the plaintiff. The plaintiff testified: "I didn't see any lights at all on the train until after it passed me; as it turned me around, I seen the firebox of the engine. I saw the headlight after it stopped up there. If there was any man standing on the front of the tender as it went over the crossing, I didn't see anybody. If anybody had been standing there, looks like I could have seen him. I have driven an automobile truck for five or six years, all told. My brakes were in good shape that night; we had the brakes adjusted the Sunday before that night. * * *"

The witness Hall corroborated the statement of the defendant's witnesses and that of the interrogatories as to the skid marks of the truck "back toward town" and did

not say that defendant's agent was not on the running board of the tender.

We have indicated that the reasonable inference of Willingham's statement, that there were no lights on the rear of the tender, had reference to the man on the running board and not to the headlight of the engine.

It will be noted that at or about the time of this collision there were two motor vehicles approaching this crossing, one from the north that was more or less obscured as to the side of the track by houses; yet that car observed the rule of "stop, look and listen" and there was no injury that accrued to it. We have indicated that the instant truck from the south had an unobstructed view of the immediately approaching train, that no effort was made to check its speed until the truck was within 28 or 35 feet of the crossing. Thus no effort was made to observe the rule of "stop, look and listen" until it was too late and the collision was the resulting danger which occurred. There is no evidence that would indicate that any member of the train crew realized that the rule would not be observed by this driver or that anyone saw him nearer to the crossing than one-half block from the point of collision.

When this evidence is taken with the two photographs showing the intervention of no obstacle as to sight, that was presented to the driver of the Peinhardt truck as it approached the crossing from the south and his admission that his attention was on the truck approaching the crossing from the north, no doubt was left in the mind of a reasonable man that the proximate cause of the collision when it occurred and at the point of impact and the undisputed evidence of Willingham that he did not "stop, look and listen" as the law required, was due to the negligence of the plaintiff driver.

The duty rests upon a person approaching or going on a railroad crossing to exercise ordinary care and prudence to discover the approach of trains. Such has been held many times in opinions and judgments of this court. The facts of no two cases are exactly the same and hence there can be no hard or fast rule as to what constitutes contributory negligence as it is dependent upon facts and surrounding circumstances in various cases.

In Louisville & N. R. Co. v. Stewart, 128 Ala. 313, 29 So. 562, it is well established that one approaching a crossing must avail himself of knowledge of the locality as far as he can reasonably do and act accordingly. Owens v. Wilmington & Philadelphia Traction Co., 1 W.W.Harr. 475, 31 Del. 475, 117 A. 454; and his familiarity with local conditions may be sufficient to show negligence when considered in connection with other material circumstances. 52 C.J. 286, § 1861; Bates v. Louisville & N. R. Co., 184 Ala. 655, 64 So. 298; Louisville & N. R. Co. v. Calvert, as Adm'r, 172 Ala. 597, 55 So. 812; Central of Georgia R. Co. v. Barnett, 151 Ala. 407, 44 So. 392; Central of Georgia Ry. Co. v. Foshee, 125 Ala. 199, 212, 27 So. 1006.

The general authorities are to the effect that "a stranger approaching a railroad crossing must exercise due care for his own safety [Rau v. Northern Pac. R. Co., 87 Mont. 521, 289 P. 580; Baltimore, etc., R. Co. v. Kately, 12 Ohio App. 16, 26, 30 O.C.A. 97], and ignorance that there was any railroad crossing at the point in question will not excuse the negligence of a traveler who should have observed the same [Allyn v. Boston, etc., R. Co., 105 Mass. 77, 79; Horandt v. Central R. Co., 78 N.J.L. 190, 73 A. 93; Baltimore, etc., R. Co., v. Kately, 12 Ohio App. 16, 25, 30 O.C.A. 97; Anspach v. Philadelphia, etc., R. Co., 225 Pa. 528, 74 A. 373, 28 L.R.A., N.S., 382.] * * *." 52 Corpus Juris 286, § 1861.

The foregoing general authorities state the requirements of a stranger approaching a railroad crossing and the duty as to due care exacted of him for his safety. What is the rule of our cases?

The many cases in this jurisdiction on the rule of "stop, look and listen" were considered in Cunningham Hardware Co. v. Louisville & Nashville R. Co., 209 Ala. 327, 96 So. 358, to the effect that it cannot be affirmed as a matter of law in every case and under all circumstances that there is an absolute duty to stop, look and listen before a traveler may go on a railroad crossing. This is the last expression of this court as to the effect of our several decisions on the point just indicated. The case of Atlantic Coast Line R. Co. v. Jones, 202 Ala. 222, 80 So. 44, was explained and commented upon in Cunningham Hardware Co. v. Louisville & Nashville R. Co., supra.

In Sloss-Sheffield Steel & Iron Co. v. Peinhardt, supra, we indicated that Willingham was familiar with the general con-

ditions and approach from Cullman to Birmingham. Mr. Peinhardt stated that Willingham had been driving for him since 1934, that the plaintiff testified that ·he traveled the two streets in question across which the line of defendant's railway passed, and that one-fourth of the time he passed over the way and crossing at which this collision occurred. The local conditions observed by all the witnesses who testified as to the same indicated skid marks on the road from a point about 35 feet from the crossing. This showed the fact that the driver knew of the presence of the train on the track when he was some distance away and did not have his car under control as was his duty to do.

The rule in this jurisdiction as to "stop, look and listen" is in accord with general authorities and those in this jurisdiction to the effect that "a person is not required to regulate his conduct with reference to facts of which he is justifiably ignorant. In order that one may be . guilty of contributory negligence it is essential that he act or fail to act with knowledge and appreciation, actual or imputed, of the danger or injury which his conduct involves." (Citing Alabama cases.) 45 Corpus Juris, p. 946, § 506.

We advert to the words of Mr. Justice Bouldin in Johnston v. Southern R. Co. et al., 236 Ala. 184, 181 So. 253, 254, as follows: "This legal duty (to stop, look and listen) grows out of the well-known fact that a train cannot be stopped, or removed, if already on a crossing, with the same dispatch as a · motor car equipped as the law requires. It is a duty to see that the crossing is clear of danger from approaching trains, and even a more patent duty when the train is already on the crossing, and its presence is a warning. This court has often, with great emphasis, declared it is negligence as matter of law to disregard this duty. * * * (citing many cases)." (Parenthesis supplied.)

The trial court erroneously charged the jury that § 9954 of the Code had application to the present case, where the collision occurred in the City of Birmingham, as to the erection and maintenance of signs at railroad crossings. Said section has no application here in that the evidence clearly showed that the alleged accident and collision took place within the corporate limits of the City of Birmingham. Appel v. Selma St. & S. R. Co., 177 Ala. 457, 59 So. 164, and Seaboard Air Line Ry. v. Smith, 53 Fla. 375, 43 So. 235.

Code, § 2020, vests in city councils authority to regulate railroad crossings, including "appliances, on grade crossings, for the safety of the public" at grade crossings.

Chief Justice GARDNER, and BOULDIN, BROWN, FOSTER, and LIVINGSTON, JJ., are in accord with the writer that the writ of certiorari should be granted, but limit their concurrence to the proposition stated that the court erroneously charged the jury that § 9954 of the Code had application within the City of Birmingham, where the collision occurred, and to which exception was duly reserved by the defendant.

KNIGHT, J., concurs with the writer in toto.

BROWN, Justice.

I find nothing in the evidence to warrant an inference that the defendant's servants were guilty of subsequent negligence. In fact it clearly appears from the plaintiff's testimony and· the physical facts that the train had passed over the crossing block- .ing the street while plaintiff's automobile was some distance from the crossing, and there is no evidence that the trainmen discerned its approach until just before the crash. Therefore, conceding that the question of simple, initial negligence was a jury question, nevertheless the evidence is undisputed that the plaintiff failed to stop, look and listen, and to my mind there is nothing in the evidence to excuse him from so doing. His negligence, as a matter of law, proximately contributed to his injury and bars a recovery for such simple, initial negligence. .