18 So.2d 709

### SLOSS–SHEFFIELD STEEL & IRON CO. v. LITTRELL.

#### 6 Div. 172.

Supreme Court of Alabama.

Jan. 13, 1944.

Rehearing Granted June 8, 1944.

Rehearing Denied July 25, 1944.

S. M. Bronaugh and Bradley, Baldwin, All & White, all of Birmingham, for appellant.

Harsh & Hare and Edw. L. Rose, all of Birmingham, for appellee.

THOMAS, Justice.

The suit was for damages caused by a collision at a road crossing in a town or village.

The accident occurred after dark about eight o'clock on May 7, 1941. The railroad track at the scene of the accident crossed a four-lane highway at an angle and was imbedded in the concrete or paved highway. Said thoroughfare is 44 feet

wide, with a 9 ft. 10 in. grass plot between the north and south bound traffic lanes. The thoroughfare was frequented by traffic going north and south and was dangerous from frequent passing of pedestrians, trucks, automobiles and other vehicles. The point of impact was near the intersection of the east half of the highway, the front of the automobile coming into contact with the side of the engine about where the flagman sat on the right. Both the engine and the automobile were in motion. The west and south bound lanes of the road were the old highway leading to Birmingham. The east or north bound lanes had been recently constructed, changes having been made.

The picture and maps referred to by several witnesses during the trial are a part of the record and before the court for consideration in an understanding of the statements made. For instance, one witness said, "I did not see him along here," referring to the flagman, etc.

The appellant contends for the affirmative charge refused to defendant on grounds that: (1) no initial negligence is shown, and (2) contributory negligence of plaintiff is shown as a matter of law.

The evidence being contradictory required submission of the question of initial negligence to the jury for failure to give statutory signals before traversing a public road crossing within a city, town or village. The trial court sufficiently instructed the jury on such duty under the statutes. Code 1940, Tit. 48, § 170. Louisville & Nashville R. Co. v. Bailey, Ala.Sup., 16 So.2d 167.[1] The evidence of plaintiff and of Charlie Morris, as well as of other witnesses, tends to show a failure to flag traffic to stop or failure to give warning of such crossing in the nighttime and presented adverse evidence as to failure to give such signals or due warning of the approaching engine at the crossing, or a due flagging of the crossing under the conditions of time and place that prevailed. McMillan v. Aiken, 205 Ala. 35, 45, 88 So. 135. The material issues of fact were for the jury.

Defendant's engineer testified that he knew the highway at the place of crossing was an artery of heavy traffic, and realized this when he drove the tender and locomotive backwards across the said four-lane highway in response to signals given to him by the conductor who was acting as the flagman. The evidence of these agents shows signals were given and rear lights displayed while the engine was backing across the road.

Appellee's evidence shows that the engine backed suddenly, without warning, from the company's shalepit, lower than road level, located in a cut on the west or south bound side of the crossing, and was not visible to these witnesses until it was upon the highway. It is further shown from appellee's evidence that the engine could not be seen while down in the shalepit and that warnings or signals of approach were not given.

There is material conflict in the reasonable inferences to be drawn from testimony of the plaintiff and of defendant's engineer as to how the collision occurred. This warranted the submission of the case to the jury. There were reasonable tendencies in the evidence by several witnesses affecting the charge of initial negligence and the plea of subsequent negligence. This is exemplified in testimony by witnesses for defendant as to the number of flagmen directing the crossing of the engine over the highway; whether such flagmen were on the north side of the railroad track or on both sides thereof; whether the flagmen displayed lights and the color thereof; how the flagmen proceeded across the western lane of the highway; at what point on the crossing and on which side of the engine the flagman stepped up on the running board of the engine and whether he thereafter displayed his light warning of the danger to those who approached from the east lane from the south.

There was conflict in the evidence as to the respective speeds of the engine and automobile; the nature of the skid marks of the automobile on the east lane of the highway; the exact place of impact and the distance from the track and the manner and speed at which plaintiff's car passed Walker's car, proceeding to the point of collision.

There was further conflict in the evidence as to whether plaintiff could have seen the track on which the engine was backing, said track running practically diagonally across the highway and imbedded therein. Plaintiff testified that there were no crossing signs and the track was not visible to him as he approached thereto. As to this defendant's engineer said, "It is built across the highway. Its

---

[1] 245 Ala. 178.

cross ties are covered with concrete in between the rods, so it would be like a highway there." And "I never saw Mr. Littrell or his automobile when it was in motion at any time. * * * I could see an object between the rails behind the tender and from about 50 feet you could see both rails about fifty feet away. You could not see right at the back of the tender. * * * I was sitting down in a normal position on the engine." The flagman said the railroad rails were imbedded in the concrete with no cross ties or anything showing the presence of the railroad crossing. The rails sank in the concrete pavement across this road. The evidence as to the track contains reasonable adverse inferences.

The evidence showed there were no road signs on the crossing and that other material changes had been made in the crossing when the new highway was constructed. Plaintiff said you could not tell "when you got to the crossing." He admitted that he knew that there was a crossing "up on the hill." The engineer said the land marks had been changed recently on the new highway replacing the old. Defendant's witness Walker testified the train suddenly came up out of the pit in front of them. That he was approaching the point in his car and plaintiff pulled around and passed him on the left, that he saw the approaching train. Plaintiff's witness Morris said the engine and tender and its flagman appeared up there "just as quick as lightening." All of this indicated material questions of fact for decision of the jury.

The rule of *"stop, look and listen"* has been recently considered in Louisville & Nashville Railroad Co. v. Bailey, Ala.Sup., 16 So.2d 167;[1] Sloss-Sheffield Steel & Iron Co. v. Peinhardt, 240 Ala. 207, 199 So. 33; Sloss-Sheffield Steel & Iron Co. v. Willingham, 240 Ala. 294, 199 So. 28; Id., 243 Ala. 352, 10 So.2d 19.

Appellant's counsel urge the court not to "extend" the doctrine of the Willingham and Peinhardt cases any further and suggest a review of these decisions. The trial court entered its judgment under the view that it was not necessary to extend the doctrine announced in said cases in the application to the facts before the court in the instant case. There is no essential distinction between the degree of familiarity possessed by plaintiff motorist in the Willingham case and that shown in this case by plaintiff and in driving his car to the point of impact. In the Willingham case [240 Ala. 207, 199 So. 31] the truck from the south had an unobstructed view of the "immediately approaching train." In this case the evidence shows the view was obstructed as the train backed up onto the crossing from a lower level where the shale pit was located, and that it was at eight o'clock at night and about dark as stated by some witnesses and by others as "dark and could not see engine."

A consideration of the whole evidence convinces us that the trial court was correct in submitting to the jury the facts of the case and in denying the motion for a new trial on the question of the weight of evidence.

Refused charges requested by the defendant denominated 1 and 3 are assigned as error. Said charges were properly refused because of the material conflict in the evidence. McMillan v. Aiken, 205 Ala. 35, 88 So. 135.

The third assignment of error is based on refused charge numbered eight, in the following words: "I charge you that if you find from the evidence that plaintiff suffered his alleged injuries and damages as a proximate consequence of *an unavoidable and inevitable* accident, then and in that event you need consider the case no further and your verdict should be in favor of the defendant." (Italics supplied.)

This court has expressly said that this charge should be refused employing, as it does, the words "an unavoidable and inevitable accident." Sloss-Sheffield Steel & Iron Co. v. Willingham, 243 Ala. 352, 10 So.2d 19; Kelly v. Hanwick, 228 Ala. 336, 153 So. 269; Grauer v. A. G. S. R. Co., 209 Ala. 568, 96 So. 515.

The fourth assignment of error is based on refusing defendant's requested written charge which we denominate 10. We have indicated that the duty to "stop, look and listen" has been recently stated in the foregoing cases. In Sloss-Sheffield Steel & Iron Co. v. Willingham, 243 Ala. 352, 10 So.2d 19 [7], 22, the observation was made that such charge is "confusing and misleading because it pretermits knowledge on the part of appellee that he was about to cross appellant's tracks, which [is] one of the [important] issues [to be] tried." However, the trial court explained fully in

---

[1] 245 Ala. 178.

its general charge the duty of one approaching a railroad track to *stop,* look and listen. Moreover the charge under consideration omits the requirement of the rule to *stop* before crossing a railroad track, of which one has knowledge or notice, and thus confuses or misleads as to the doctrine of *stop, look and listen.*

We have examined the evidence as to the amount of judgment rendered and considering the actual damage, loss of time from work, hospital and medical expense, and the many cases of this court (the most recent being Motor Terminal & Transportation Co. v. Millican, 244 Ala. 39, 12 So.2d 96), we are of opinion that the judgment rendered was not excessive. The plaintiff testified at the time of the trial, more than a year after the accident occurred, that he was still suffering from the injuries imposed by the collision.

The judgment of the circuit court is affirmed.

Affirmed.

GARDNER, C. J., and BROWN and LIVINGSTON, JJ., concur.

On Rehearing.

LIVINGSTON, Justice.

On former consideration of this cause, we held that the issue of contributory negligence was, under the evidence, one for the jury. The opinion in that respect was based on the cases of Sloss-Sheffield Steel & Iron Co. v. Peinhardt, 240 Ala. 207, 199 So. 33; Sloss-Sheffield Steel & Iron Co. v. Willingham, 240 Ala. 294, 199 So. 28; Id., 243 Ala. 352, 10 So.2d 19; and our finding that "there is no essential distinction between the degree of familiarity possessed by plaintiff motorist in the Willingham case and that shown in this case by plaintiff and in driving his car to the point of impact."

On reconsideration, we are persuaded that an erroneous conclusion has been reached.

The first trial of the Willingham case, supra, resulted in judgment within the statutory appellate jurisdictional limits of the Court of Appeals, and an appeal was prosecuted to that court. In its opinion the Court of Appeals (29 Ala.App., 569, 199 So. 15, 23) said:

"If the plaintiff did not know that the crossing existed at the point where the collision occurred, and had no consciousness of that fact, as pointed out in the case of Seaboard Airline Railway v. Roy, supra [14 Ala.App. 202, 69 So. 233], and there was no sign board at the crossing to give him notice of the proximity of the railroad and to warn him of the necessity of looking out for the crossing and he saw no train and heard no signal therefrom, then if under these circumstances plaintiff failed to stop, look and listen can it, with logical reason or common sense, be said that he was guilty of contributory negligence in coming into dangerous proximity to, or in attempting to cross over, said railroad track without first stopping, looking and listening? We think not."

On petition to this Court for writ of certiorari to review the opinion of the Court of Appeals, we approved that court's statement of the law as set out above. And although the writ of certiorari was granted, the decision was limited to the proposition stated, that the trial court erroneously charged the jury that section 9954 of the Code, Code 1940, Tit. 48, § 172 had application within the city of Birmingham, where the collision occurred. And in the Peinhardt case, reported in 240 Ala. 207, 199 So. 33, this Court specifically approved the above excerpt from the Willingham case, supra.

The second trial of the Willingham case resulted in a judgment for plaintiff within the statutory appellate jurisdiction of this Court. On appeal in that case (243 Ala. 352, at page 355, 10 So.2d 19, at page 22) we said:

"Appellee's replication numbered 2 alleges, in substance, that appellant's tracks were embedded in and on a level with the paving of the street: that he was unfamiliar with the crossing, and did not know of the existence of appellant's tracks; that no stop, look and listen signs or any other sign designating or indicating the existence of said crossing or as a warning of the presence of said track or the approach of said train on said tracks appeared at this point: that said train was being backed over said crossing in the night, in a drizzling rain without lights and without being flagged across said crossing; and that he did not see or hear the approach of appellant's train to said crossing in time to avoid the collision.

"While not committing the Court to the proposition that it was necessary to present

the foregoing facts by way of special replication instead of under a general denial of the plea of contributory negligence, we hold that such facts, if true—a jury question—did relieve the appellee from the duty to stop, look and listen, and no reversible error intervened in the ruling of the trial court. Louisville & Nashville R. Co. v. Williams, 172 Ala. 560, 55 So. 218; Louisville & Nashville R. Co. v. Cunningham Hdw. Co., 213 Ala. 252, 104 So. 433; Sloss-Sheffield Steel & Iron Co. v. Willingham, supra."

In our opinion, the foregoing is but the statement of a rule of reason and common sense.

In the instant case the plaintiff testified, with reference to his knowledge of the defendant's railroad:

"I moved to Gardendale in the fall of 1939, and moved away in the fall of 1941. At the time of this accident, I had been living at Gardendale from the fall of 1939 until May 7th, 1941, the time the accident happened. I was working a five and six day week during that period. Coming to and from work it was necessary for me to come up the Lewisburg Highway from Gardendale towards the city of Birmingham; during that time I crossed over this railroad track twice a day on each day that I worked. * * * I have come back to Birmingham at night. * * * There is a railroad along there some place, I knew it was on the hill there."

The foregoing evidence clearly demonstrates that the rule announced in the Peinhardt and Willingham cases, supra, has no application here. Under the law and facts of this case, appellee was not relieved from the duty to stop, look and listen. His failure to do so is a bar to recovery in this cause. Appellant was entitled to the general charge on the issue of contributory negligence.

The application for rehearing is granted: the cause is reversed and remanded.

Application for rehearing granted; reversed and remanded.

GARDNER, C. J., and BROWN, FOSTER, and STAKELY, JJ., concur.

THOMAS, J., dissents.