# Stevens *et al. v.* The State.

## *Indictment for Murder.*

1. *Trial and its incidents; sufficiency of sentence of court on conviction for manslaughter.*—Where, on a trial under an indictment for murder, the jury returns a verdict of guilty of manslaughter in the first degree, fixing the punishment of the defendant at imprisonment in the penitentiary for two years, a sentence of the court which follows the minute entry showing the return of the verdict of the jury, and after reciting that the defendant had nothing to say why the sentence of the law should not be pronounced upon him, then reads: "It is therefore, considered by the court and it is the judgment and sentence of the court that the said defendant [naming him] be imprisoned in the penitentiary of the State of Alabama for a term of two years," is valid and sufficient to show that the judgment of the court was invoked and pronounced upon the guilt of the defendant.

[Stevens *et al.* v. The State.]

2. *Same; sufficiency of verdict of jury.*—Where two defendants
are jointly indicted and tried for murder, a verdict of the
jury that "We, the jury, find the defendants guilty of man-
slaughter in the first degree, and fix the punishment at two
years' imprisonment," if defective by reason of ambiguity,
such defect is removed by the jury stating, in answer to
questions asked by the court in the presence of the defend-
ant, that the word "defendants" included both the defendants;
and it is permissible for the court to remove any ambiguity
by making such inquiries of the jury.

3. *Homicide; conspiracy; admissibility of evidence.*—On a trial
under an indictment for murder, where it is shown that the
killing occurred just after a suit between the defendants'
mother and the deceased had been continued, and there was
evidence tending to show a conspiracy between the defend-
ants, their father and their brother-in-law to kill the de-
ceased, it is competent for the State to show that just be-
fore the continuance of the case, when the defendants' mother
asked for subpoenas for witnesses, the brother-in-law of the
defendants stated to the justice before whom the case was
pending that he need not issue the subpoenas, that "we in-
tend to fix it up in our own way;" it being shown that just
after this statement the deceased walked out of the room
with the defendants and their said brother-in-law, and  the
killing occurred a few minutes afterwards.

4. *Same; same; same.*—In such a case, where it is shown that
on the night before the killing, the defendants staid at the
house of their brother-in-law, who went with them the next
day to the trial, and where the brother-in-law, on the direct
examination, testified that there was no conspiracy between
him and the defendants, it is competent for the State to ask
him on cross examination, as to whether or not on the even-
ing of the killing, he told a certain named person that the
defendants would be at the place of the trial "and hell would
be raised"; and upon the witness denying having made such
statement, it is competent for the State, for the purpose of
impeachment, to prove by such person that the statement
was made by said witness.

5. *Same; same; same.*—In such a case, after one of the defendants
had testified that he was at the place of the difficulty as a
witness in the suit pending between his mother and the de-
ceased, and knew what the contract was between his mother
and the deceased, it is competent for the State, on cross ex-
amination, to ask such defendant what was said in the con-
tract; such question being directed to the credibility of wit-
ness' testimony.

[Stevens *et al.* v. The State.]

6. *Homicide; charge of court to jury.*—On a trial of two defendants under an indictment for murder, where there is evidence tending to show that there was a conspiracy existing between the defendants to kill the deceased, and that one of the defendants did not shoot at the deceased at all, a charge which instructs the jury that the other defendant had the same right to act in self defense as if he had been first attacked, even though the evidence shows that the deceased had attacked his brother and he had interfered to prevent the deceased from further attacking him, is erroneous and properly refused.

7. *Same; same.*—In such a case, a charge is free from error which instructs the jury that "if you believe from the evidence beyond a reasonable doubt that there was a conspiracy between the defenuants and the father to take the life of Vester Henson [the deceased] or do him great injury and the father of defendants fired the fatal shot that killed the deceased, then they would be equally guilty with the father, if the shooting by the father was done in carrying out the conspiracy previously entered into by him."

8. *Same; same.*—In such a case, it is not error for the court to instruct the jury as a part of its oral charge that "if you believe from the evidence beyond a reasonable doubt that these defendants entered into a conspiracy to kill the deceased, and the deceased was killed with a pistol, you would find them guilty of murder in the second degree, if it was done unlawfully and with malice."

9. *Same; same.*—In such a case, where there was evidence tending to show that while there were several shots fired at the deceased by the defendants with pistols, that the fatal shot was fired by the father of the defendant from a rifle, and that there was a conspiracy between the defendants and their father to kill the deceased, a charge which instructs the jury that if they believe that the deceased "was killed by a shot from a rifle and not with a pistol, you must acquit the defendants," is erroneous, in that it pretermits all reference to a conspiracy.

10. *Homicide; charge as to self defense.*—On a trial under an indictment for murder, a charge which instructs the jury that "in order to invoke the doctrine of self defense defendants must have been free from fault in bringing on the difficulty— reasonably free from fault will not do," is free from error.

APPEAL from the Circuit Court of Walker.

Tried before the Hon. A. H. ALSTON.

The appellants, Adolphus and Walter Stevens, were

jointly indicted for murder in the second degree for killing one Vester Henson, by shooting him with a pistol, was convicted of manslaughter in the second degree and sentenced to three years' imprisonment in the penitentiary.

The evidence for the State tended to show that on the day of the killing there was to be a trial of a case between the mother of the defendant and Vester Henson, the deceased; that this case was a suit in a justice of the peace court, in which the defendant's mother was suing the deceased for rent; that when the case was called for trial it was continued, but before it was continued, the defendant's mother asked for some subpoenaes to be issued for witnesses; that after the case was continued Walter Stevens, one of the defendants, got up in the room where the people was assembled for trial and stepped over to the deceased and said that he wanted to see him; that the deceased walked from the house with Walter and Adolphus Stevens and the defendant; that as they walked along the defendants were cursing at the deceased, and upon Adolphus asking him why he had treated their sister as he had, he denied having done anything wrong towards the defendants' sister; that thereupon Adolphus replied that he intended to whip him for it; that the deceased pulled his knife and cut at Adolphus, who stepped backwards and stumbled over a bush; that thereupon Walter Stevens stepped between them and the shooting commenced; that while the shooting was going on, Jesse Stevens, the father of the defendants, was seen to level his Winchester rifle at the deceased and fire it, and upon the firing of the rifle of Jesse Stevens, the deceased fell. There was conflict in the evidence as to whether the deceased or Walter Stevens fired the first shot.

The evidence for the defendants tended to show that neither of them fired at the deceased until after he had cut at Adolphus Stevens with his knife and cut his collar, and that after cutting at Adolphus Stevens, the deceased cut Walter Stevens' throat and shot him twice; that thereupon Walter Stevens pulled his pistol and began shooting at Henson; that Adolphus Stevens did

not shoot at all. The defendants, as witnesses in their own behalf, testified that there was no conspiracy between them and their father, and John Morgan, their brother-in-law, to kill the deceased.

During the examination of the justice of the peace before whom the case between the defendants' mother and the deceased was pending for trial, and after he had testified that the defendants' mother asked for subpoenaes for witnesses, the State asked said witness the following question: "Did John Morgan, a brother-in-law of defendants, say anything about issuing a subpoena in the defendants' presence?" The defendants objected to this question upon the ground that it was irrelevant, immaterial and not binding on the defendants. The court overruled the objection, and the defendants excepted. The witness answered that John Morgan said in the presence of the defendants "By God you need not be issuing these damn old subpoenaes. We intend to fix it up in our own way." The court overruled the defendants' motion to exclude this answer, and to this ruling the defendants duly excepted. It was shown by the evidence that John Morgan was a brother-in-law of the defendants and lived at Horse Creek, nine or ten miles away; that the night before the difficulty the defendants came to the house of John Morgan and spent the night, and that he came to the place where the killing occurred with the defendants the next morning.

John Morgan was introduced as a witness for the defendants, and testified that he was present at the shooting, but there was no conspiracy existing between him and the defendants to kill the deceased. The solicitor asked the witness the following question: "Did you tell Andy Pebley the evening before the shooting at Horse Creek that the Stevens boys would be out on the night train and hell would be raised up above the next day?" The defendants objected to this question upon the ground that they were not shown to be present at the time the statement asked about was made, and were not shown to have known anything about the conversation. The court overruled the objection, and

the defendants duly excepted. The witness answered that he did not make said statement to said Pebley.

The said Andy Pebley was introduced as a witness, and he was asked by the State the following question: "Did John Morgan tell you the evening before the shooting at Horse Creek that the Stevens boys would be out on the night train and hell would be raised up above the next day?" The defendants objected to this question upon the ground that it called for incompetent and hearsay testimony. The court overruled the objection, and the defendants excepted. The witness answered that John Morgan did make said statement at the time specified.

J. Henson, the father of the deceased, when examined as a witness, identified certain clothes which were shown him as the same which were worn by the deceased when he was shot, and stated that they had been in his possession ever since the killing and were in the same condition as they were at the time of the shooting.

A witness, Dan Rhodes, was, during his examination, shown the same clothing, and he identified them as the clothing Vester Henson had on at the time he was shot. Thereupon the State offered the clothing in evidence, and defendants objected on the ground that the clothes had not been properly identified, and that the witness had not been in possession of the clothes. The court overruled the objection, and the defendants duly excepted.

The defendants separately excepted to the following portion of the court's oral charge to the jury: (B.) "In order to invoke the doctrine of self-defense defendants must have been free from fault in bringing on the difficulty, reasonably free from fault will not do." (C.) "If you believe from the evidence beyond a reasonable doubt that there was a conspiracy between the defendants and the father to take the life of Vester Henson (the deceased), or do him great injury, and the father of defendants fired the fatal shot that killed the deceased, then they would be equally guilty with the father, if the shooting by the father was done in carryint out the conspiracy previously entered into by them."

3 c

(D.) "If you believe from the evidence beyond a reasonable doubt that these defendants entered into a conspiracy to kill the deceased, and the deceased was killed with a pistol, you would find them guilty of murder in the second degree, if it was done unlawfully and with malice."

The defendants requested the court to give to the jury the following written charges, and separately excepted to the court's refusal to give each of them as asked: (12.) "I charge you, gentlemen of the jury, that Walter Stevens had the same right to act in self-defense as if he had been first attacked, even though the evidence shows that Vester Henson had attacked his brother, Dolph Stevens, and Walter had interfered to prevent Henson from further attacking Dolph Stevens." (A.) "I charge you that if you believe that Vester Henson was killed by a shot from a rifle gun and not with a pistol, you must acquit the defendants."

The judgment entry was as follows: "This, the 19th day of March, 1902, came C. W. Ferguson, solicitor, who prosecutes for the State of Alabama, and also came the defendants in their own proper persons, and by attorneys, and the said defendants being duly arraigned upon said indictment for their plea thereto says in person, that they are not guilty, issue was joined on this plea, thereupon came a jury of good and lawful men, to-wit: T. B. Hyche and eleven others, who being empannelled and sworn according to law, upon their oaths do say: 'We, the jury, find the defendants guilty of manslaughter in the first degree, and fix the punishment at two (2) years' imprisonment.' The jury being asked by the court in open court in presence of both of the defendants, and their counsel, if the word 'defendants' included both defendants, they answered that the verdict included both defendants, and fixed the punishment of each at two (2) years' imprisonment. And thereafter before the jury was discharged, the defendants demanded a poll of said jury on said verdict, and each of said jurors separately stated that that was his verdict." The judgment entry then proceeded to adjudge the defendants guilty of manslaughter in the first degree, etc.

There was a motion made by the defendants in arrest of judgment, upon the ground that the verdict returned by the jury was insufficient and uncertain in that it does not state whether both of the defendants or each of them shall suffer one year, so as to make two years, and that it fails to state what punishment each of the defendants shall suffer. This motion was overruled. Subsequently the court rendered its sentence upon the defendants, which was in words and figures as follows: "And now upon this, the 22d day of March, 1902, Walter Stevens, the defendant, being in open court and being asked by the court if he had anything to say why the sentence of the law should not now be pronounced upon him, says nothing. It is therefore considered by the court, and it is the judgment and sentence of the court that the said defendant, Walter Stevens, be imprisoned in the penitentiary of the State of Alabama for a term of two (2) years." A similar sentence was passed upon the defendant, Adolphus Stevens.

D. A. McGregor, J. T. Shugart and Coleman & Bankhead, for appellant.—The verdict should be the jury's conclusion on considering each defendant's case by itself. And if guilty against all, it should be in terms which can be construed as several.—Code, § 1036. While several defendants jointly indicted may be jointly tried, the verdict and judgment should be several. A general verdict imposing a joint fine or *punishment* is improper, and a *venire de novo* should be awarded.—22 Encyc. Pl. & Pr., 847.

It is necessary, before evidence of declarations by conspirators can be admitted that a foundation should be laid by proof addressed to the court, *prima facie* sufficient to establish the existence of such a conspiracy. *Owens v. The State*, 74 Ala. 401; *Hall v. State*, 51 Ala. 9; *Hunter v. State*, 112 Ala. 77.

Chas. G. Brown, Attorney-General, for the State. The verdict of the jury was sufficient, and the sentence of the court was sufficient.—*Wilkinson v. State*, 106 Ala. 27. The record conclusively shows that the punishment of two years on each of the defendants was

Vol. 131.

awarded by the verdict of the jury. It is not essential to the validity or sufficiency of the verdict that it should be in writing.—*State v. Underwood,* 2 Ala. 744; *Meadowcroft v. State,* 163 Ill. 56; *White v. State,* 30 Ala. 520.

The court did not err in its rulings upon the evidence. *Martin v. State,* 89 Ala. 115; *Turner v. State,* 97 Ala. 57; *Elmore v. State,* 110 Ala. 93; *Tanner v. State,* 92 Ala. 1.

TYSON, J.—Upon the authority of *Driggers v. The State,* (123 Ala. 46), and *Wilkinson v. The State* (106 Ala. 28), we must hold that there is enough expressed in the minute entry to show that the judgment of the court was invoked and pronounced upon the guilt of the defendants. If it be conceded that the verdict of the jury as expressed in writing was too uncertain and indefinite, a point we do not decide, to support a judgment of conviction, this defect was cured by what was said by them, in explanation of the written verdict. Since verdicts may be *ore tenus,* the oral statement by the jury of their findings, in connection with the written verdict, was entirely sufficient and eliminated all ambiguity, if it existed, in the latter. This principle is clearly announced in the case of *The State v. Underwood,* 2 Ala. 744, where it was said: "It is not essential to a verdict, that it should be written; the jury may announce it to the court *ore tenus,* or upon paper at their pleasure; and, however rendered, upon the suggestion of the judge, it may be varied by the jury, in its terms, so as to make it speak their intentions. And the change, thus made in the finding, need not be noted in writing, even if it be such as to entirely supersede the verdict." See also *Robinson v. The State,* 54 Ala. 86.

The record affords abundant evidence from which the jury were authorized to infer that there was a conspiracy between the father, the brother-in-law of these defendants and the defendants themselves to kill the deceased. In the light of the results which followed almost immediately upon the declaration of Morgan, the brother-in-law, made in their presence, to the justice of the peace, it was clearly inferable that he had reference

to defendants as well as to their father who are shown to have participated in the deadly combat.

In view of Morgan's testimony on direct examination that there was no conspiracy between him and the defendants, it was entirely competent for the prosecution for the purpose of impeachment, after proper predicate laid, to prove by Pebley that he (Morgan) made the statement which he denied making. So, too, in view of the inference afforded by the evidence that defendants went from their home, in an adjoining county to the place of the difficulty, for the purpose of provoking a fight with the deceased, and in view of the statement of the defendant, Adolphus, that he was at the place of the difficulty as a witness in a suit pending between his mother and deceased, and knew what the contract was between his mother and deceased, it was competent for the solicitor on cross-examination, to further ask him what was the contract between his mother and the deceased, for the purpose of showing, if he could, that defendant's presence was not for the purpose of giving testimony as a witness, but was in furtherance of the common design to slay the deceased.

The only other exception reserved upon the trial to the admission of evidence, was the action of the court in permitting the State to introduce the clothing worn by deceased when killed. This exception is not urged in argument. Besides, there is manifestly no merit in it, the clothing having been fully identified.

Charge 12 refused to defendants is so clearly bad, no further comment is necessary.

Charge A pretermits all reference to a conspiracy, which the testimony tended to show existed between the defendants and their father to kill the deceased, and was, therefore, properly refused.

There was no error in those portions of the oral charge of the court excepted to.

There being no error in the record, the judgment must be affirmed.