4 So.2d 422

### DOWNEY v. STATE.

2 Div. 691.

Court of Appeals of Alabama.
May 27, 1941.

Rehearing Denied June 17, 1941.

Affirmed on Mandate Oct. 28, 1941.

George Pegram, of Linden, for appellant.

Thos. S. Lawson, Atty. Gen., and Jas. F. Matthews, Asst. Atty. Gen., for the State.

BRICKEN, Presiding Judge.

This appellant, defendant below, was indicted for the offense of manslaughter in the first degree, in that he unlawfully and intentionally, but without malice, killed Bettis DeLoach, by running into him with an automobile, etc.

The trial resulted in the conviction of the defendant of the offense of manslaughter in the second degree, and his punishment fixed at hard labor for the county for a period of 30·days. From the judgment of conviction this appeal was taken.

The trial court in its oral charge said, among other things, that under the evidence the defendant could not be convicted of manslaughter in the first degree; that the Solicitor for the State did not contend that the defendant could be convicted of manslaughter in the first degree, but the Solicitor did ask for a conviction at the hands of the jury of the offense of manslaughter in the second degree, etc.

It appears from the record that on the trial, this case was submitted to the jury upon the issue as to whether or not the death of the named deceased was proximately caused by the gross negligence of the defendant in the operation of his automobile at a high rate of speed over a public highway. The presiding judge of the court, in his oral charge to the jury, said: "Now, gentlemen, in this case it is not necessary for me to discuss with you the evidence in the case, because you have heard that, it is all fresh in your minds. In this case the State contends that the defendant, Louie Downey, on the 14th day of September, 1937, and in Marengo County, Alabama, that this defendant was driving an automobile along a highway in this County at a high rate of speed, at an unusual rate of speed, and that at the time he was driving his automobile in that highway at that rate of speed, that he did not have due regard for the safety of others, dependent upon the condition of the road, the width of the road, the amount of traffic that was on the road, but that his traveling at the rate of speed at which he was traveling was grossly negligent, and that by reason of his gross

carelessness by traveling at that rate of speed at the time and under the circumstances he was traveling at night, why, he is guilty of gross negligence, and in traveling or driving his automobile beyond the rate of speed required by law, and in not having his automobile he was driving under control, so as to prevent an accident, why, he killed, unfortunately, a citizen of your County, and that he is liable and should be punished."

At the conclusion of the oral charge, the defendant requested the following special written charge: "1. The court charges the jury if they believe the evidence in this case, they must find the defendant not guilty." The court refused to give said charge, and able counsel for appellant earnestly insists error to a reversal prevailed in this action of the court.

In opposition to this insistence the State contends: (1) That if the appellant, while under the influence of intoxicating liquors, drove a motor vehicle along a public highway and ran against deceased as a proximate result whereof deceased died, defendant was guilty of manslaughter in the second degree; and (2) that the evidence being in conflict as to whether defendant was under the influence of intoxicating liquors at the time of the accident, it was for the jury to pass upon his guilt or innocence upon the charge of manslaughter.

The highway laws of this State, of force and effect at the time the deceased was killed, provided: "Section 51. (a) Any person driving a vehicle on a highway shall drive the same at a careful and prudent speed not greater than is reasonable and proper, having due regard to the traffic, surface and width of the highway and of any other conditions then existing and no person shall drive any vehicle upon a highway at such speed as to endanger the life, limb, or property of any person." Genl. and Local Acts Alabama, Extra Session 1936, p. 235, Code 1940, Tit. 36, § 5(a).

■■ The statute also provides certain rates of speed to be observed and complied with at certain places and under certain conditions, not here relevant, and declared it to be unlawful to violate any of its provisions. It is apparent, therefore, that under the laws of this State, it is unlawful for any person to drive an automobile upon a highway of this State at such speed as to endanger the life, limb, or property of another. So, if the defendant, at the time he struck and killed deceased, was driving his automobile upon a highway at such speed as to endanger the life or limb of deceased, or any other person, and the death of deceased was proximately caused by such unlawful act, then the killing may have amounted to manslaughter in the second degree, regardless of whether the driving of the automobile by the defendant was grossly careless, or grossly negligent. Rombokas v. State, 27 Ala.App. 227, 228, 170 So. 780, 781; Broxton v. State, 27 Ala.App. 298, 171 So. 390; Willis v. State, 29 Ala.App. 365, 197 So. 62; Sawyer v. State, 20 Ala.App. 504, 103 So. 309; Thompson v. State, 131 Ala. 18, 31 So. 725.

■■ It is first to be observed, as applicable to the above statute, that the degree of care to be used by the driver of an automobile upon the highways of this State is that which a reasonably careful and prudent man would use under like conditions. Reaves v. Maybank, 193 Ala. 614, 69 So. 137. Whenever a shown, or proved, state of facts is such that reasonable men may fairly differ as to whether due care has been used, or not, or whether there was negligence or not, then the question is one for the jury. But where the facts are such that all reasonable men must draw the same conclusion from them, then the question of due care, or of negligence, must be considered one of law for the court. Reaves v. Maybank, supra; Sloss-Sheffield Steel & Iron Co. v. Willingham, 240 Ala. 294. 199 So. 28.

■ The concrete question to be decided by this court is,—does the evidence, shown by this record, in the court below, convince this court that the trial court erred in refusing to give the above noted written charge requested by the defendant? In answering this question the deplorable and tragic accident cannot, and should not, of itself be made the basis or premise from which the acts of the defendant should be determined, or his guilt adjudged. The answer to this question must be founded solely upon the evidence introduced upon the trial in the court below. Lay v. State, 26 Ala. App. 458, 162 So. 319.

The testimony introduced upon the trial of the case in the court below shows, that on the night of September 14, 1939, at a point in Marengo County, about 8 miles north of Thomasville, Clarke County, Alabama, on the Thomasville-Linden public highway, at an hour not earlier than 11 o'clock P. M. and not later than 1 o'clock A. M. the appellant, while driving his automobile along and over said highway, struck

and killed DeLoach, the deceased named in the indictment. There were only two eye witnesses to the facts, this appellant and Roy Geiger, the driver of a pick-up truck, involved in the tragedy.

The testimony further showed, without dispute, that on said night the said Roy Geiger was driving said pick-up truck northward along said highway and when he reached the point on said highway where the accident occurred the lights on said truck went out suddenly, as testified to by him. At this time the deceased was a guest of the said Geiger, riding with him in said truck. According to the testimony of Geiger when the lights went out on said truck he turned to the right of said highway, but not off of the travelled portion thereof, and stopped or parked said truck in said highway. After he stopped his truck in the highway the said Geiger and Mr. DeLoach, his guest, got out of it, both of them, and without putting out any signal lights whatever, either in front or to the rear of said truck, and without making any effort to warn the travelling public of the presence and position of said truck in the highway, the said Geiger lifted the hood of the truck to see if he could discover the trouble. According to his testimony, on direct examination, "he was driving north and pulled to the right of the road and got out and lifted his (the truck's) hood, and Bettis, the deceased, got out and asked if he could help; that witness saw lights approaching from down the road and saw that he was coming pretty fast, but did not pay any attention to them; that he had his head down looking at the wire. That, as it, the car came up to them, it swung to the right of them and witness heard an impact and thought at first he (Louie Downey) had knocked the fender off or something but realized immediately he had hit Bettis; that Bettis was standing on the right side of the pick up truck and was practically out of the road. The car was eighteen inches from the side of the road, and Bettis was standing off of the road; that both witness's car and the other one which approached were travelling north, and that witness's car was eighteen inches from the road."

According to the above statement at the time of the impact DeLoach was standing at the right hand side of the truck and was practically out of the road. The witness heard an impact and first thought the defendant had knocked a fender off, or something. Other testimony showed, without dispute, that the Downey car left maroon colored paint on the pick up truck, and paint off of the truck was on the Downey car. The maroon colored paint off of the Downey car was all along the right side of the fenders and running board of the truck.

Witness George DeLoach, uncle of the deceased, testified that, "on the side of the pick up, where the spare tire was, the right rear fender, there was paint that went around the spare tire that set up on the fender, that showed where this paint had been rubbed off from the car that hit it on the right hand side." So, it appears, without dispute, from the testimony that there was an impact between the Downey car and the pick-up truck immediately preceding the striking of the deceased and it was doubtless this impact that caused the witness, Geiger, to think that the defendant "had knocked a fender off, or something." At this time the deceased, according to Geiger's statement, was standing on the right hand side of the truck practically out of the road. And this reasonably appears to have been the true situation, momentarily, before the deceased was struck. But the witness, Geiger, further testified on direct examination that "he saw DeLoach when he went around next to the ditch, and he didn't come back before the car struck him." On cross-examination this witness testified: "There was no lights at all showing on his (Geiger's) truck at the time of the accident when Mr. Downey came up and that he had not put out any flares or any lights either to the back or front of his pick up truck." That the truck was between him and the deceased, and witness was on left hand side working on the lights. That the deceased was rolling a cigarette.

The reasonable conclusion to be drawn from the testimony of this witness, if he was looking down at the wires on the motor, working on the lights, and only casually noticing the approach of the Downey car, as he testified, is that he was not reasonably in a position to testify accurately either as to the actual movement of the Downey car, or as to the movements, acts and position of the deceased, who was on the opposite side of the truck from the witness, at and immediately preceding the striking of the deceased by the defendant. In addition to the above, said witness testified: "That defendant did not stop and witness holloed as loud as he could and called him by name and told him to stop,

and he went 195 steps and stopped. That he didn't know just how long it was, but he didn't turn around immediately. That he did stop for half a minute and then turned around and came back and asked me what was the matter, and I told him he had killed Bettis. So the next thing, I looked around and defendant was gone, and he didn't see him around there any more, but defendant did leave his car and disappeared. That in the opinion of witness the defendant was under the influence of liquor, or that is, he appeared to be drinking, but witness was not close enough to defendant to smell any whiskey on his breath."

According to the testimony the defendant did not leave the scene of the accident immediately after learning that DeLoach was dead, but was there at the place of the accident after other people came up. The probative value of the testimony of witness Geiger, due to the many contradictions, inconsistencies and hazardous statements, is necessarily slight, if any, and in our opinion not enough to constitute a variance from the testimony of the defendant himself.

■ In addition to the above it was proved by the State that after the defendant left the scene of tragedy, a pint bottle, with a small quantity of whiskey in it, was found in the defendant's automobile. The defendant denied any knowledge of the presence of this bottle in his car, and denied also that he was under the influence of intoxicating liquor, or that he was drinking. In view of this plain and emphatic statement of the defendant, coupled with the contradictions and unreasonableness of the testimony of the witness Geiger, we are of the opinion, and so hold, that there was no testimony adduced upon the trial of the case in the court below showing that the defendant was drunk, or drinking, or under the influence of intoxicating liquor at the time of the fatal accident. The believable testimony, in addition to the statement of the defendant, introduced upon the case, showed, without substantial dispute or controversy, that the defendant, both before and after the accident, was not drinking, or under the influence of intoxicating liquor. Sloss-Sheffield Steel & Iron Co. v. Willingham, 240 Ala. 294, 199 So. 28.

It is the further opinion and judgment of this court that the physical facts connected with the driving of his automobile by the defendant through the narrow space between the truck and the ditch, testified to by various witnesses, without his overturning the car or seriously injuring the truck, reasonably shows that the defendant, at that time, was in the possession of his faculties and that the influence of intoxicating liquor upon the defendant did not proximately cause the death of deceased. Rombokas v. State, supra.

The law of this State provides: "No person shall park or leave standing any vehicle, whether attended or unattended, upon the paved or improved or main traveled portion of any highway, outside of a business or residence district, when it is practicable to park or leave such vehicle standing off of the paved or improved or main traveled portion of such highway." Code of Alabama 1928, Section 1397 (72), Code 1940, Tit. 36, § 25.

The evidence introduced upon the trial of this case, in the court below, convinces us that witness Geiger could easily have complied with the provisions of the above statute and that his failure to do so created a set of circumstances and conditions beyond the control of the defendant and caused him, without his consent, or fault upon his part, to be placed in the position and under the conditions which proximately resulted in the unfortunate death of the deceased.

The applicable rule is expressed in the case of City of Birmingham v. Latham, 230 Ala. 601, 162 So. 675, 678, as follows: "These definitions are based upon the theory that while a person is expected to anticipate and guard against all reasonable consequences, yet he is not expected to anticipate and guard against that which no reasonable man would expect to occur."

■ Witness W. L. Langley, who was with the defendant and in defendant's car at the time deceased was struck, testified in behalf of defendant, and among other things said that he was asleep at the time the deceased was struck; that he was awakened by the defendant and was told of the accident by him; that the defendant turned his car around, after going about 100 yards, and went back to the scene; that Roy Geiger stated "that it was not their (defendant's) fault; that it was all his (Geiger's) fault; that he ought to have had lights on the pick-up truck." This witness further testified that he went for Mr. Corgile; that he fixed the lights on the pick-up truck; that he drank some beer that night and some that evening, but that he was not drunk. On cross-examination

the Solicitor asked this witness the following question: "Q. Don't you remember when you went down to Federal Court as a witness in Judge McDuffie's court in the Downey case, and Judge McDuffie said: 'Mr. Langley you said you were asleep' and the Judge said 'Mr. Langley as a matter of fact you were drunk, were you not?'" Defendant's counsel immediately objected to the above question, stating grounds appropriately covering the objection. The trial court overruled the objection and defendant excepted. We are of the opinion that the court committed reversible error in permitting the question to be propounded to the witness in the form stated. The State had the right to ask the witness if he had not stated, at a different time and place, that he was drunk at the time of the accident, inasmuch as he had testified he was not drunk at that time. McCullar v. State, 20 Ala.App. 585, 104 So. 436, 438. It is true, also, that proof of the time, place and parties present, is a necessary prerequisite to proof of a contradictory statement for the purpose of impeaching a witness, Sullivan v. State, 22 Ala.App. 140, 114 So. 73, but to incorporate in a question, laying a predicate for such impeachment what some one else said and did at that time and place and in the hearing of those present, is in effect to allow a question to be asked calling for testimony tending to prove res inter alios acta, or incompetent and irrelevant matters, and, in this instance of a detrimental and damaging character. Wesson v. State, 238 Ala. 399, 191 So. 249, 251.

The defendant testified as a witness in his own behalf and in substance said that on the night of the accident he was driving his automobile along and over the public highway from Thomasville in Clarke County to his home in Marengo County; that this was the usual and regular road used by him in going from Thomasville to his home; that he was travelling at a rate of speed estimated by him to be between 40 and 50 miles per hour; that his car was properly equipped with both head and tail lights; that when he approached the scene of the accident, he came suddenly upon the pick-up truck, then standing parked, or dead, in the highway and without any lights, or other warning signals of its presence in the highway; that he was close upon said pick-up truck, when he first saw it and that he at once turned his car to the left to pass said truck, and that as he did so he saw someone standing in the highway to the left of said truck and

that he then swung his own car to the right and while going by said truck, on the right hand side thereof, Mr. Bettis DeLoach suddenly and unexpectedly ran into the side of the defendant's car, at or near the windshield, and was struck and killed; that he did not at that moment know who it was that had been struck; that his windshield was broken and his eyes filled with shattered glass; that he first stopped and wiped the glass out of his eyes and awakened Mr. Langley and then drove on up the highway to a spot, a short way distant, where he could turn around and then turned around and went back to the scene of the accident where he learned who it was that had been struck, and whom he did not personally know; that he also learned that it was Mr. Roy Geiger, who he knew only slightly, that was driving the truck; that he asked Mr. Geiger why he was stopping there in the highway and that Mr. Geiger said to him,—"You couldn't help it * * * Lord have mercy, we left once, but we went back." That Mr. Geiger also said that the truck lights went out and when the defendant asked him who the boy was he replied that it was Bettis DeLoach, his pal. The defendant further testified that he went to Mr. DeLoach and that after staying with him until he died and after sending for Mr. Corgile and after the return of Mr. Corgile, and after other people came up, and after learning that Mr. DeLoach's father and people had been sent for or notified, that he departed from the scene, leaving his automobile there, as he did not want to be present when the father and people of Mr. Bettis DeLoach came; that he was not drunk, or drinking, at the time of the accident and knew nothing of any whiskey bottle, or whiskey, that was found in his automobile after he left it at the place of the accident.

This court has considered all of the testimony, shown by the record, with due study and care and does not find that there is any reasonable, or believable, by reasonable persons, testimony that is at variance with the statement of the defendant himself. He was under the legal duty not to attempt to pass the standing pick-up truck on the left hand side thereof, if there was a man, or obstruction facing him on that side of the highway. Code of Alabama 1928 (Michie's) Section 1397 (61) Code 1940, Tit. 36, § 13. It was a late hour at night. The circumstances were such as might reasonably impress a careful and reasonable man that it would be dangerous

to stop and it is the judgment of this court that when he attempted to pass on the right hand side of the truck, under the conditions then existing he did what a reasonably prudent and careful person might have been expected to do under those conditions. It is therefore the opinion and judgment of this court that the trial court committed error in refusing to charge the jury "that if they believed the evidence in this case, they must find the defendant not guilty," which charge, as stated, was requested in writing. Lewis v. State, 27 Ala. App. 155, 167 So. 608.

The rule as to giving or refusing the affirmative charge need not be restated, or repeated. It is well understood. McMillan v. Aiken, 205 Ala. 35, 88 So. 135; Sloss-Sheffield Steel & Iron Co. v. Peinhardt, 240 Ala. 207, 199 So. 33; Lewis v. State, supra; Allums v. State, 27 Ala.App. 162, 167 So. 612; Ex parte Grimmett, 228 Ala. 1, 152 So. 263.

The judgment of the lower court, for the reasons pointed out, must be, and the same is hereby, reversed and the cause remanded.

Reversed and remanded.

PER CURIAM.

Affirmed under provisions of Code 1940, Tit. 13, § 95.