107 So.2d 903

**Doyce McCARY et al.**

v.

**STATE.**

**3 Div. 6.**

Court of Appeals of Alabama.
Oct. 7, 1958.
Rehearing Denied Nov. 18, 1958.

Rogers & Scott, Greenville, and Beddow, Gwin & Embry, Birmingham, for appellants.

John Patterson, Atty. Gen., and Edmon L. Rinehart, Asst. Atty. Gen., for the State.

HARWOOD, Presiding Judge.

These appellants, Doyce McCary, Edward Gaskey, and Cortez Melvin Gaskey stand convicted under an indictment which in four counts, respectively, charged them with a conspiracy to: (a) commit an assault with intent to murder George Brown; (b) to murder George Brown; (c) to commit an assault with intent to murder by exploding dynamite near or under a dwelling house of George Brown; and (d) to commit murder by exploding dynamite in or near the dwelling house of George Brown.

The general background of this case, as deduced from the record shows that the International Woodworkers of America, C.I.O. had instituted a strike against the W. T. Smith Lumber Company on 20 July 1955.

Violences of various kinds flared during the strike.

George Brown, the alleged victim of the conspiracies with which these appellants were charged, as a member of the Woodworkers union had gone on strike on 20 July 1955, but on 18 November 1955 had returned to his job with the lumber company, and was so employed on 27 February 1956.

The evidence presented by the State, material to this review, tends to show that on 27 February 1956 these three appellants went to the Steak House in Greenville and ordered supper. They engaged in conversation Miss Frances Coker, a waitress, and inquired of her concerning Jimmie Craven and Stewart O'Bannon, who were labor organizers and representatives of the union.

Miss Coker went to the front of the restaurant and made a note of the car in which the appellants were riding.

During this time Miss Coker received a telephone call.

After finishing their meal the appellants drove off in the direction of Highway 31, east of Greenville.

Shortly thereafter Deputy Sheriff William Herring and Officer L. S. Crabtree, of Chapman, stopped appellants' car about a mile and a half north of Chapman. McCary was driving, and the Gaskey brothers were sitting on the front seat with him.

Deputy Herring asked to see McCary's driving license which showed it was issued by the State of Oklahoma.

The officers searched the car and found therein a sack containing four sticks of dynamite taped together, four dynamite caps, a fuse, and a blackjack. New York and Oklahoma automobile license plates were also found in the car.

In McCary's pocket they found a map of Butler County. On this map there was written in green ink: "Second green house on right past Pure Oil Station direction; north from Georgiana Hi-way 31 app. .5 mile from No. Chapman Road." Also on the map were circles indicating the Pure Oil Station and a "green house," with the word "it" written thereby.

Evidence showed that George Brown lived in a green house as indicated on the map.

Bank books issued by Oklahoma banks, and drivers licenses issued by Oklahoma were found on the Gaskey brothers.

W. W. Thomas, Sheriff of Butler County, was presented as a witness for the State.

Mr. Thomas testified that he had been in law enforcement work in Butler County for a long number of years, and was at present Sheriff of Butler County.

On direct examination Sheriff Thomas was asked if it had come to his attention or did he have knowledge of the dynamiting of any dwelling houses in Butler County, Alabama. The objection of the defense being overruled to this question, the Sheriff answered:

"The first one that ever came to my knowledge was several years ago, and it happened in Chapman, Alabama."

On motion of the defense this answer was excluded as being not responsive to the question.

The record then shows the following:

"Q. Mr. Thomas, would you mind to answer yes or no, whether or not in your twenty two or twenty three years of work as a Chief Deputy, Sheriff or policeman in Butler County, Alabama, if you have knowledge of any house being dynamited or explosive set off thereunder prior to July 20, 1955?

"Mr. Rogers: Now, we object to that, if the Court please.

"The Court: Objection overruled.

"Mr. Rogers: We reserve an exception.

"A. Yes, sir.

"Q. All right, sir, would you recall the number? Whether one or a thousand? A. One.

"Q. Mr. Thomas, from July 20, 1955 to March 21, 1956, you have served continuously as Sheriff of this County, have you not? A. I have.

"Q. I will ask you if since the 20th day of July, 1955, you have had occasion to investigate any bombing of houses at or near Chapman?

"Mr. Rogers: We object to that question, if the Court please.

"The Court: Objection overruled.

"Mr. Rogers: We reserve an exception.

"A. Yes, sir, I have.

"Q. Without naming any specific instance or instances, if there be any, do you recall the number—approximately? A. Well, I wouldn't * * *

"Mr. Rogers: Wait a minute, we object to that, if the Court please.

"The Court: Overruled.

"A. Well, I wouldn't attempt to name any special number without going back to the records, I have investigated a good many, I will say that."

Obviously the above evidence elicited from Sheriff Thomas over appellants' objection tended to show the commission of other crimes.

■ It is fundamental under our decisions that ordinarily evidence of distinct and independent offenses is not admissible in the trial of a person accused of crime. Baker v. State, 19 Ala.App. 437, 97 So. 901; Brown v. State, 32 Ala.App. 131, 22 So. 2d 445; McMurtrey v. State, 37 Ala.App. 656, 74 So.2d 528; Mason v. State, 259 Ala. 438, 66 So.2d 557, 42 A.L.R.2d 847.

■ This for the reason that when a defendant is charged by indictment, he must be tried on that indictment. The very purpose of an indictment is to limit and make specific the charges that an accused will have to face. Brasher v. State, 249 Ala. 96, 30 So.2d 31. Further, care should always be taken not to convict an accused of one alleged crime because he has been guilty of another. Harden v. State, 211 Ala. 656, 101 So. 442.

■ Exceptions to the rule that prior offenses by an accused are inadmissible have been developed, where such offenses are relevant, and material on the question of knowledge, intent, plan or design, motive, identity, and inseparable crimes as part of the res gestae of the offense charged. McMurtrey v. State, supra; Mason v. State, supra.

Several of these exceptions have been considered in the opinions of this court and of our Supreme Court. For those interested we refer to Wilkins v. State, 29 Ala.App. 349, 197 So. 75; Lee v. State, 31 Ala.App. 91, 13 So.2d 583; Brown v. State, 32 Ala. App. 131, 22 So.2d 445; Lee v. State, 246 Ala. 69, 18 So.2d 706; Daniels v. State, 243 Ala. 675, 11 So.2d 756; Robinson v. State, 243 Ala. 684, 11 So.2d 732; Johnson v. State, 242 Ala. 278, 5 So.2d 632; Brasher v. State, supra.

We will not attempt a discussion of these exceptions, for the reason that the State presented not one jot of evidence tending to connect these appellants to the prior dynamitings testified to by Sheriff Thomas. None of the exceptions therefore could apply.

In the brief filed by the Attorney General it is argued that: "Wide latitude is allowed to the State in presenting evidence of facts and circumstances in a conspiracy case, and any fact or circumstance tending to show an agreement to commit a crime is relevant and admissible to establish a conspiracy." The above is a correct statement. However it is inapplicable to the question, now being considered, for Sheriff Thomas' testimony does not tend to establish a conspiracy by these appellants to murder George Brown, or to dynamite the dwelling house of George Brown, but only tends to show the dynamiting of other houses, without any evidence tending to connect these appellants with such other dynamitings.

In fact, the clear inference from the evidence presented by the State is that these appellants had just shortly arrived in Butler County when they were apprehended.

Sheriff Thomas' testimony as to prior dynamitings could not logically tend to establish the ultimate fact in issue in this case, either directly or by reasonable inference. The issue in this case was whether these appellants had conspired to murder George Brown, or to dynamite his dwelling house. Sheriff Thomas' testimony as to other dynamitings, in the absence of evidence tending to connect these appellants with such other offenses, was collateral to the issues of this case.

■ The jury was therefore called upon to weigh facts against these appellants for which they were not shown to be responsible, to have knowledge of, or to be connected with. We cannot say that their substantial rights were not probably prejudiced thereby. We think they were. See Henley v. State, 3 Ala.App. 215, 58 So. 96.

■ Further, while great latitude is permitted the State in producing evidence in conspiracy cases, yet the ordinary rules as to the materiality, competency, and relevancy of evidence must be observed.

■ It could not be argued that in a prosecution for murder that the State could introduce evidence showing the number of homicides that had been committed in the county during a certain period of time prior to the commission of the homicide being tried; there being no evidence to connect the accused with such other homicides. This principle, by analogy, clearly demonstrates the inadmissibility of Sheriff Thomas' testimony in the present case.

Other points are argued in appellants' brief as constituting error. Being clear to the conclusion that the point above discussed compels a reversal of this judgment we reserve consideration of these additional points.

Reversed and remanded.