301 So.2d 219

**Joseph J. SVIRBELY**

v.

**STATE.**

**6 Div. 550.**

Court of Criminal Appeals of Alabama.

Oct. 1, 1974.

Richard W. Bell, Alabaster, for appellant.

William J. Baxley, Atty. Gen., Montgomery, and Johathan P. Gardberg, Sp. Asst. Atty. Gen., Mobile, for the State.

PER CURIAM.

An indictment was returned against defendant-appellant on May 5, 1972, charging him with a felonious assault with a deadly instrument, to-wit, a pistol, upon a law enforcement officer while engaged in the active discharge of his lawful duties. The particular statutory offense is proscribed by Section 3, Act No. 746, Acts of Alabama, 1967, p. 1600, approved September 8, 1967, now found in § 374(20), Code of Alabama 1940, Tit. 14, Recompiled 1958, 1973 Cumulative Pocket Part. The statute provides for punishment by imprisonment in the penitentiary for not less than two years nor more than twenty years.

Upon due arraignment, defendant pleaded not guilty. He was found guilty by a jury and sentenced by the court to impris-

onment in the penitentiary for a term of fifteen years.

The evidence presented by the State demonstrated that the appellant and two other men acted in concert for the purpose of committing a robbery and that a police officer was shot when he attempted to apprehend one of the conspirators. The defendant did not fire the shot which wounded the police officer, but was convicted in the court below on the basis of his being an accomplice or an abettor.

The events leading up to the shooting which occurred on April 25, 1972, are important in that they connect the appellant with one John Charles Brady, who shot Officer Charles Sharit of the Warrior Police Department. The appellant and Brady had traveled to Athens, Alabama, during the week prior to April 25 from Sharon, Pennsylvania. One Jack May and his family joined Brady and the appellant in Athens. May and his family, Brady, and the appellant checked into a motel in Athens on April 22, 1972. Brady and appellant shared a room.

While in Athens the appellant, Brady and May made several trips to Warrior, Alabama. Several witnesses testified that Brady, the appellant and another man were seen together eating or drinking coffee at restaurants in and around Warrior. Mrs. Dorothy Bibb, owner of the Warrior Cafe, testified that she had seen Brady and the appellant together on four or five occasions in her cafe; that on the morning of April 25, 1972, the appellant was seen with another man.

The appellant purchased a white Ford Fairlane in Decatur while he was staying at the motel in Athens. He had not procured licenses plates to place on the automobile. This same white automobile was seen in Warrior on the morning before the attempted robbery and shooting, and was seen in the area of the shooting by Mr. Bowers, the victim of the attempted robbery.

Mr. L. A. Bowers testified that on the morning of April 25, 1972, he walked to his garage where a strange man pointed a pistol at him, grabbed him around the neck and hit him in the head. After a short struggle, Bowers' assailant ran away. Mrs. Bowers called the police, who arrived within a few minutes. Bowers told the officers which direction the assailant headed. A chase ensued and Officer Sharit was seriously wounded while apprehending the assailant. This man was later identified as John Charles Brady. Police Chief Zim Banks testified he saw a white Fairlane in the area while he and Officer Sharit were pursuing Brady. Mr. Bowers testified that he spotted such an automobile with no license tag on it with two occupants and followed it in his own automobile until the white Ford Fairlane headed toward the interstate highway near Warrior. Upon returning, Bowers observed that Officer Sharit had been wounded and that Charles Brady had also been wounded in his attempt to flee.

When the appellant was apprehended in Decatur, Alabama, his billfold contained receipts for two pistols, a .38 caliber revolver and a derringer. The serial number on the revolver matched that of the weapon taken from Brady and used to shoot Officer Sharit. These receipts were signed by Jack May.

Charles Brady, called as a witness by defendant, testified that he and May had planned to break into Bowers' home to steal the contents of a safe. He stated that the appellant did not know about the plans. On cross examination Brady denied making statements to one Detective Swann of the Jefferson County Sheriff's Department which indicated that appellant knew about the planned robbery. Detective Swann testified that Brady made these statements implicating appellant in the planned robbery, particularly that all there were armed and that the plans were for May and Svirbely to wait some two blocks away while he broke into the house and join him after he had taken care of Bowers.

Testifying at length defendant, with few exceptions as to details, corroborated the

testimony of other witnesses as to the frequency, places and closeness of his association with Brady and May. On the other hand he stoutly denied any knowledge of the plans to commit the attempted robbery. He said that while in Sharon, Pennsylvania, he, Brady and May planned a vacation trip to Florida; defendant and Brady went from Pennsylvania to Athens, Alabama, in Brady's automobile; while at Athens, the day before the attempted robbery, defendant, May and Brady talked about going to Warrior the next morning. On the day of the attempted robbery, defendant drove to Warrior from Athens in the automobile defendant had purchased in Decatur; he was accompanied by Brady and May; upon arriving at Warrior, defendant said he dropped Brady off and was told by Brady to pick him up in about half an hour. He said that he and May then drove to a restaurant at Warrior and had breakfast; May went outside during that time, looked up and down the street and came back and said, "Let's go;" defendant hadn't finished all of the meal; he then drove May back to Athens; Brady was not with them. While at Athens he and May were arrested. He testified that he had bought the two pistols, for which he had receipts, from May, but that he had not used either of the pistols.

The appellant contends that the court below erred in allowing the testimony of L. A. Bowers concerning the assault on him by Brady, claiming that this was a separate and distinct offense from which the defendant was charged in the indictment.

Appellant cites McCary v. State, 39 Ala. App. 642, 107 So.2d 903, for the proposition that evidence of a distinct criminal act is not admissible. While this is true, there are exceptions, as noted in *McCary*:

"Exceptions to the rule that prior offenses by an accused are inadmissible have been developed, where such offenses are relevant, and material on the question of knowledge, intent, plan or design, motive, identity, and inseparable crimes as part of the res gestae of the offense charged. McMurtrey v. State, supra [37 Ala.App. 656, 74 So.2d 528]; Mason v. State, supra [259 Ala. 438, 66 So.2d 557]."

While the appellant did not struggle with Bowers himself, he was part of a conspiracy which planned the robbery. It is clear that any act or statement by an accused's co-conspirator in the commission of a crime, done or made before the commission of a crime, during the existence of the conspiracy and in furtherance of the plan or design, is admissible against the accused. Stokley v. State, 254 Ala. 534, 49 So.2d 284. Before such a statement can be admitted, however, proof of a conspiracy must exist. Stevens v. State, 133 Ala. 28, 32 So. 270; Scott v. State, 30 Ala. 503; Tanner v. State, 92 Ala. 1, 9 So. 613. Circumstantial evidence may be used to prove a conspiracy. *Stokley*, supra.

In Edwards v. State, 279 Ala. 371, 185 So.2d 393, it is said that:

" '. . . [B]y the act of conspiring together the parties doing so have generally assumed as a body the attribute of individuality as relates to the prosecution of the common design or purpose, and that what is done or said by anyone in furtherance of that design is a part of the res gestae, and therefore the act of all. . . .' "

As long as the conspiracy exists, acts by co-conspirators are admissible. Hagood v. State, 47 Ala.App. 626, 259 So. 2d 679.

Here, the evidence established via circumstantial evidence that a conspiracy existed. The purpose of the conspiracy was to rob the home of L. A. Bowers. The assault occurred while this robbery was being attempted—as well as the shooting of Officer Sharit. Thus, the trial

court did not commit error in allowing Bowers' testimony concerning the assault.

■ The assault of Bowers and the shooting of Officer Sharit were immediate results of the attempted robbery. It is a well established principle that the locus in quo of crime is always admissible in evidence and that everything done and said connecting the defendant with the crime is admissible as part of the res gestae. Hanson v. State, 27 Ala.App. 147, 168 So. 698, cert. denied 232 Ala. 585, 168 So. 700.

Appellant further contends that the assault on Bowers was res inter alios acta. As pointed out by the Honorable J. Russell McElroy in his treatise, Law of Evidence in Alabama, Vol. 1, pp. 19–20:

"This phrase literally signifies acts of others or transactions between others. Sometimes an item of evidence is excluded because the evidence is said to relate to matters 'res inter alios acta.'
. . .

"In every instance in which the phrase has been uttered as a ground for exclusion there has been a rule of evidence requiring exclusion that has a name other than the phrase 'res inter alios acts,'
. . .

"It is submitted that there is no rule of evidence which can be properly or accurately referred to by the phrase 'res inter alios acta.' "

While in substance we agree with Judge McElroy's submission, we think a better word for the phrase would be that the evidence is in simple terms "irrelevant or incompetent." See Downey v. State, 30 Ala.App. 285, 4 So.2d 422. It is clear that the assault of Bowers was not a relation between third parties, but an act which immediately resulted from the attempted robbery.

■ Appellant also contends that evidence of the flight of May as given by Bowers in his testimony was improperly admitted in evidence. Mr. Bowers testified as to the hurried departure from the vicinity of the crime by the two persons in the white Ford Fairlane. Out of the presence of the jury and in anticipation of testimony to be given by Mr. Bowers, defendant's counsel made objection to such testimony before Mr. Bowers had actually testified. No specific portion of his testimony as to any flight on the part of defendant or May is singled out for criticism. Even if it were it is our view that it is not subject to the ground of challenge made by the defendant to the effect that the flight of a co-conspirator is not admissible in evidence. This is generally true as to the flight of a co-conspirator after the accomplishment of the common purpose of the conspiracy. Lowman v. State, 161 Ala. 47, 50 So. 43. It does not apply to flight that is an incident to the commission of the crime. Furthermore, the flight involved was a joint flight, at the same time and in the same automobile, by a co-conspirator and the defendant himself. The one could not be shown without the other. Evidence of the flight of both under the circumstances was admissible. Densmore v. State, 25 Ala.App. 133, 141 So. 914.

The flight of appellant and May was part of the res gestae. The police officer was shot while appellant and his companion were leaving the area in which the robbery was attempted. Their flight therefrom was an important part of the total picture of the crime charged.

There is no error in the record. The judgment in this cause is hereby

Affirmed.

All the Judges concur.