LEIGH M. CLARK, Retired Circuit Judge.
This is an appeal from a conviction of grand larceny and a sentence of imprisonment for seven years.
The property allegedly stolen consisted of two 1977 Lincoln Continental Mark V automobiles of the aggregate value of, to-wit: $22,800.00, the property of Dothan Lincoln-Mercury Company, Inc.
The defendant took the stand and stoutly testified he had no knowledge of and no connection with any alleged larceny, but there was an abundance of substantial evidence of his guilt. There is no contention on appeal to the contrary. A brief summary of salient portions of the testimony should be sufficient for the purposes of this opinion.
Four witnesses testified they had previously pleaded guilty to indictments against them for the same larceny charged against defendant; that they left Quincy, Florida, at about 7:00 P.M. in company with appellant in appellant’s station wagon; they all went to the Dothan Lincoln-Mercury Car Company lot, where a chain around the lot was cut by one or more of them and two automobiles were taken therefrom; with each of the five in one of the motor vehicles, they traveled toward Cottonwood, Ala *1287 bama, where the lead automobile, which was one of the two stolen automobiles, was stopped by the police; the other two automobiles passed by.
According to the testimony of Edward Collins, an employee of the Canon Oil Company located near the Dothan Lincoln-Mercury Company in Dothan, he saw one of the stolen automobiles as it was backing out of the lot. He notified the police of Dothan, who issued an “all points bulletin” describing the vehicle. Officer Eugene Coker of the Cottonwood Police Department, testified that he heard one of the “all points bulletins” about 10:45 P.M., describing the automobile as a “maroon colored Lincoln, with the price tag on the window.” A few minutes after hearing the bulletin, he saw the automobile in Cottonwood. A light colored Lincoln was behind it and a station wagon was behind the light colored Lincoln. He stopped the light colored Lincoln and arrested the driver. The other two motor vehicles proceeded down Highway 53 toward Florida. Two men were in the automobile he stopped.
Officer Ray Helms, of the Cottonwood Police Department proceeded down Highway 53 in pursuit of the light colored Lincoln Continental, which was being followed by a station wagon. He stopped the Continental, in which were two men. The station wagon slowed up, but eased on by. He said that defendant was driving the station wagon.
Defendant was apprehended at his home in Quincy, Florida, about 2:00 A.M. of the night of the larceny. A Quincy police officer went to his home the next morning and observed a station wagon at his residence.
Defendant denied going to Dothan the night of the larceny. He said he was working until after midnight. He was corroborated as to his alibi by James Mitchell, who said he first saw defendant about 9:00 P.M. on June 27 where defendant was remodeling a store. The witness said he left about 12:00 that night. This was all at Quincy, Florida.
Most of the testimony for the State on the issue of defendant’s participation in the larceny was furnished by the four confessed accomplices. Nevertheless, there was sufficient corroboration of them by testimony of persons who had no part in the larceny to satisfy the requirements of Code of Alabama Recompiled 1958, Tit. 15, § 307.
Included within the corroborative evidence was the definite testimony of Officer Helms that at the time he stopped the light colored Continental, the defendant was driving the station wagon that was following the Continental. He also said that a photograph, identified by another witness as a photograph of a station wagon he had seen at the Dothan Lincoln-Mercury Company the night of the larceny, was a photograph of the station wagon defendant was driving. Officer Wachob of the Quincy, Florida, Police Department testified that the same photograph was a photograph of the station wagon located at defendant’s residence on the morning after the larceny. There were other circumstances indicative of defendant’s guilt, including (1) the fact, which defendant admitted, that he had had some sets of Lincoln automobile keys made at the Burdeshaw Bicycle Company in Do-than three days before the larceny, some of which keys were found in the two stolen automobiles, and (2) the admitted fact that he had borrowed bolt cutters that some of the witnesses testified were used in cutting a chain around the car lot. Defendant attempted to explain (1) by saying that his purchase of the automobile keys was for the purpose of having extra keys to his own Lincoln Continental. As to (2), he said the bolt cutters were borrowed by him to be used in some construction work in Quincy, Florida.
Appellant urges that the trial court was in error in permitting Officer Eugene Coker to testify as to the description of the stolen automobiles as contained in the “all points bulletin” which he heard about 10:45 on the night of the larceny, as shown by the record as follows:
“Q And did they give you a description of the cars to be on the lookout for?
*1288 “MR. SMITH: We object to what the bulletin was, Your Honor.
“MR. SORRELLS: It’s part of his investigation, Judge.
“THE COURT: Overruled.
“MR. SMITH: We except.
“THE COURT: Yes, sir.
“Q Was there a description of what you were to be looking for?
“A Yes, sir.
“Q What was it?
“A It was a maroon colored Lincoln, with the price tag on the window.”
We agree with appellant’s argument that the fact that “a description of cars to be looked out for” was a “part of his [the witness’] investigation” does not make such testimony admissible. To hold otherwise would, as appellant argues, permit at times the introduction into evidence of “rank hearsay,” which would include statements of third parties, not cross-examinable by defendant, and would constitute strong evidence of defendant’s guilt and even at times permit a conviction based largely upon hearsay testimony. Small v. State, Ala.Cr.App., 348 So.2d 504, aff’d, 348 So.2d 507 (Ala.1977). Although the particular testimony was not made admissible by reason of its being “a part of” the witness’ “investigation,” as indicated by the State, it constituted relevant evidence that was not subject to any objection on the ground of its being hearsay, which is asserted for the first time on appeal. Aside from any question as to the sufficiency of the objection to the question at the time of the objection, it was not subject to objection on the ground now assigned, that is, that it called for hearsay testimony. It clearly was not offered for the purpose of proving, and it does not tend to prove, the truth of the matter stated, which is an essential of hearsay. Gamble, McElroy’s Alabama Evidence, § 242.01(1) (3d Ed.1977). A similar question was disposed of in State v. Calloway, La., 324 So.2d 801, 809 (1975), as follows:
“This bill [Bill of Exception No. 11] was reserved when the trial court overruled the defense objection to the State’s eliciting from one of the arresting officers that he had received a report on the radio that the two suspects were believed to be in a black Cadillac.
“The radio communication was admitted not to prove the truth of the assertion (i. e., that the suspects were in a black Cadillac), but to explain the sequence of events leading to the arrest of the defendants from the viewpoint of the arresting officers. The testimony was therefore not hearsay. See State v. Bluain, 315 So.2d 749 (La.1975).”
Furthermore, we find that the harmlessness of the evidence under consideration is clear, in that the information contained in the bulletin is otherwise shown by the evidence conclusively and without dispute. The question of the guilt or innocence of the defendant never hinged on any issue as to the description of the automobile stolen. The only actually disputed issue was whether defendant participated in the larceny.
Appellant asserts that the trial court was in error in admitting testimony of Freddy Thompkins as to a statement made to him by one Wallace Smith on the evening of the larceny a short while before the trip from Quincy to Dothan. The point raised by appellant is shown by a part of the record as follows:
“Q Let me ask you this question: Was Mr. Peterson there when Mr. Smith told you — you had a conversation in Mr. Peterson’s presence at that time?
“A Yes, he was there.
“Q And that was when you testified about, seven, seven thirty or so?
“A Yes.
“Q And where did this conversation take place?
“A At the store.
“Q At the discount grocery store?
“A Yes.
“Q All right. What was said there in Mr. Peterson’s presence then?
“A Well, Mr. Smith called Mr. Peterson back in the back. I don’t know what they discussed. But, it was my understanding—
*1289 “MR. SMITH: We object.
“THE COURT: Yes.
“Q What was said in your presence, Freddy?
“A Well, he told me that he had some cars that he had brought from Dothan, Alabama, and he needed someone—
“MR. SMITH: And we object. I don’t—
“THE COURT: Overruled. Go ahead.
“MR. SMITH: I don’t know who he is talking about, Your Honor. There is two men there, and he is saying, ‘he’ told them.
“THE COURT: He said that Mr. Peterson was present with Smith, and that Mr. Smith did the talking, as I understand it.
“MR. SMITH: All right. We object to Mr. Smith’s conversation with him.
“THE COURT: I understand, Mr. Smith, that Mr. Smith was in the presence of Mr. Peterson. Was he in the presence of Peterson? Was he there, when he told you that?
“A Yes, sir, Mr. Peterson was there. “THE COURT: All right.
“Q What did Mr. Smith say to you at that time?
“MR. SMITH: We renew our objection.
“THE COURT: Overruled.
“A He told me at that time, that the cars that they had bought, he wanted me to go with Mr. Peterson up there, and bring them back.
“Q ‘Up there?’ Did he say where up there was?
“A Dothan.
“Q Dothan?
“A Dothan.
“Q All right. Go ahead.
“A He said in Dothan, Alabama. And I want you all to bring them back, because I already bought them. So, he turned us over to Morris Peterson, and told us to follow him, in the car with him, let him take us up there, because he knows where abouts to go.”
Neither side made clear its contention as to the connection, if any, between Wallace Smith and the actual Jarceny of the automobile. According to some testimony, which included testimony of defendant, defendant was with Wallace Smith at the Dothan Lincoln-Mercury Company where they were talking with a salesman about buying an automobile three days before the larceny. Defendant testified that he worked for Wallace Smith and another person who owned a store in Quincy, Florida; that he had been working on a wall of the store for about two weeks before the night of the larceny and had seen and talked with Wallace Smith on more than one occasion that night.
Appellant argues that the testimony of Freddy Thompkins as to what Smith stated to him constituted inadmissible hearsay. There was no objection on that ground. The trial court should not be reversed for overruling objections to the admission of evidence where an appropriate ground for objection was not asserted on the trial. Reese v. State, 49 Ala.App. 167, 269 So.2d 622, cert. denied, 289 Ala. 750, 269 So.2d 625 (1972); Harris v. State, 57 Ala.App. 558, 329 So.2d 618 (1976).
Aside from the above, we are of the opinion that the particular evidence does not constitute inadmissible hearsay for two separate and distinct reasons as follows.
Without implying, and without intention to imply, that Wallace Smith was a co-conspirator in the larceny, there was some evidence indicating that he was at the time of the admission in evidence of the testimony as to his statement. The statement of a co-conspirator in the commission of a crime, made during the existence of the conspiracy and before the commission of the crime, which purports to be in the furtherance of the conspiracy, is admissible against the accused. Svirbely v. State, 53 Ala.App. 452, 301 So.2d 219 (1974); Frazier v. State, 48 Ala.App. 210, 263 So.2d 511, cert. denied 288 Ala. 743, 263 So.2d 516 (1972); Hagood v. State, 47 Ala.App. 626, 259 So.2d 679 (1972); Muller v. State, 44 Ala.App. 637, 218 So.2d 698, cert. denied 283 Ala. 717, 218 So.2d 704 (1968).
In addition,
*1290 “The general rule is ‘that all acts done and all words spoken pending the doing of a particular act, which tend, in any way, to illustrate or give character to the act, are receivable in evidence as a part of the res gestae of the act.’ Ward v. Lane, 189 Ala. 340, 66 So. 499. The res gestae embraces all facts which are relevant, explanatory, or illustrative of, or which give character or characterize, the act or the principal fact for decision. Roan v. State, 225 Ala. 428, 143 So. 454.” Linville v. Crittenden, 272 Ala. 630, 632, 133 So.2d 381, 383 (1961)
We find no error in the record. The judgment appealed from should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the New Judicial Article (Constitutional Amendment No. 328). His opinion is hereby adopted as that of the Court. The judgment below is hereby
AFFIRMED.
All the Judges concur.